**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,     ) | |
|     ) | |
|     ) | |
| Plaintiff,     ) | Civil Action No. 3:20-cv-01979-M |
|     ) | |
| v.     ) | |
|     ) | |
| NEORA, LLC, *et al.*,     ) | |
|     ) | |
| Defendants.     ) | |
|     ) | |

**ORDER FOR PERMANENT INJUNCTION AND OTHER RELIEF**
**AS TO DEFENDANTS NEORA, LLC, AND JEFFREY OLSON**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).  The Commission thereafter filed a motion for summary judgment against Defendants Neora, LLC, formerly known as Nerium International, LLC ("Neora"), and Jeffrey Olson ("Olson") (collectively, "Judgment Defendants").

The Court, having granted summary judgment in favor of the Commission and against Judgment Defendants, and having found that the Commission is entitled to the relief sought against Judgment Defendants for their deceptive acts or practices in connection with the operation of an unlawful pyramid scheme that deceives consumers with misleading income and health claims, hereby makes findings and enters an Order for Permanent Injunction and Other Relief as to Defendants Neora, LLC, and Jeffrey Olson ("Order").

**THEREFORE, IT IS ORDERED** as follows:

1

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      This is an action by the Commission instituted under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).  Pursuant to this Section of the FTC Act, the Commission has the authority to seek the relief contained herein.

2.      The Complaint states a claim upon which relief may be granted under Sections 5(a), 12, and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52, and 53(b).

3.      This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Judgment Defendants.

4.      Venue in the United States District Court for the Northern District of Texas is proper pursuant to 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b)(2), (b)(3), (c)(1), and (c)(2).

5.      The activities of Judgment Defendants are "in or affecting commerce" as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.      There is no genuine issue as to any material fact concerning the liability of Judgment Defendants for the illegal practices charged in the Complaint.

7.      Undisputed facts show that Judgment Defendants participated in deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by:

    a.      Operating or promoting participation in an unlawful scheme in which participants pay money to the company in return for which they receive (i) the right to sell products, and (ii) in return for recruiting other participants into the program, the right to receive rewards which are unrelated to the sale of products to the ultimate users, often referred to as a pyramid scheme; and

b.      Making deceptive representations that consumers who become Neora distributors or recruiters ("Brand Partners") are likely to earn substantial income.

8.      Undisputed facts show that Judgment Defendants participated in deceptive acts or practices and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by:

a.      Making false, misleading, or unsubstantiated health claims that eicosanoyl-5-hydroxytryptamide ("EHT") or products containing EHT prevent, reduce the risk of, or treat:  (i) chronic traumatic encephalopathy ("CTE") or brain injuries, including concussions; (ii) Alzheimer's disease; and (iii) Parkinson's disease; and

b.      Making false or misleading health claims that EHT or products containing EHT are scientifically proven to prevent, reduce the risk of, or treat:  (i) CTE or brain injuries, including concussions; (ii) Alzheimer's disease; and (iii) Parkinson's disease.

9.      Undisputed facts show that Judgment Defendants provided the means and instrumentalities for the commission of deceptive acts and practices, which acts and practices alone constitute deceptive acts and practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by:

a.      Furnishing Brand Partners with promotional materials to be used in recruiting new participants that contain false and misleading representations that consumers who become Brand Partners are likely to earn substantial income; and

b.      Furnishing Brand Partners with marketing and advertising materials that contain false, misleading, or unsubstantiated representations that:  (i) EHT or products containing EHT prevent, reduces the risk of, or treat CTE or brain injuries, including

3

concussions, Alzheimer's disease, and Parkinson's disease; and (ii) EHT or products

containing EHT are scientifically proven to prevent, reduce the risk of, or treat CTE or

brain injuries, including concussions, Alzheimer's disease, and Parkinson's disease.

10.     As no material facts are in dispute, the Commission is entitled to judgment as a

matter of law pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

11.     Judgment Defendants are liable for injunctive relief for their violations of the FTC

Act.

12.     Entry of this Order is in the public interest.  There being no just reason for delay,

the Clerk is directed to enter judgment immediately.

## **DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.     "**Benefit**" means any consideration, including:  (1) any reward, payment,

discount, commission, compensation, bonus, product, or product credit; (2) eligibility to receive

any reward, payment, discount, commission, compensation, bonus, product, or product credit; or

(3) eligibility to receive rank or change in rank.

B.     "**Business Venture**" means any written or oral business arrangement, however

denominated, whether or not covered by 16 C.F.R. Part 437, that consists of providing payment

or other consideration for the right or means to offer, sell, or distribute a product or service.

C.     "**Cosmetic**" means:  (1) articles to be rubbed, poured, sprinkled, or sprayed on,

introduced into, or otherwise applied to the human body or any part thereof intended for

cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles

intended for use as a component of any such article; except that such term shall not include soap.

4

D.    "**Covered Product**" means any Dietary Supplement, Food, Drug, or Cosmetic, and includes Neora EHT, ME Sports, and eicosanoyl-5-hydroxytryptamide (EHT) or any product purporting to contain EHT.

E.    "**Dietary Supplement**" means:  (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

F.    "**Defendants**" means Jeffrey Olson and the Corporate Defendants, individually, collectively, or in any combination.

1.    "**Neora**" means Neora, LLC, formerly known as Nerium International, LLC, and its successors and assigns.

2.    "**Corporate Defendants**" means Neora; Signum Biosciences, Inc.; and Signum Nutralogix, a subsidiary of Signum Biosciences, Inc., and their successors and assigns.

3.    "**Judgment Defendants**" means Neora and Jeffrey Olson.

G.    "**Drug**" means:  (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure,

mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

H.    "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

I.    "**Food**" means:  (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

J.    "**Multi-Level Marketing Program**" or "**MLM**" means any plan or program in which a participant has the right to:  (1) recruit others into the program or have others placed into the participant's downline, and (2) receive any Benefit that is based, in whole or in part, upon purchases, sales, recruitment, or any other activities of the participant's downline. "Downline" refers to the collection of participants whom a participant has personally recruited (first level), any participants and customers recruited by first level participants (second level), any participants and customers recruited by second level participants (third level), and so forth, however denominated.

## ORDER

### I.

## BAN ON MULTI-LEVEL MARKETING

**IT IS ORDERED** that Judgment Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from engaging, participating, or assisting others in the advertising, marketing, promoting, or operating of any Multi-Level Marketing Program, including any product- or service-based pyramid scheme.

### II.

## PROHIBITED MARKETING SCHEMES

**IT IS FURTHER ORDERED** that Judgment Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from engaging, participating, or assisting others in the advertising, marketing, promoting, or operating of any Ponzi scheme or chain referral scheme.

### III.

## PROHIBITION AGAINST MISREPRESENTATIONS
## OR UNSUBSTANTIATED CLAIMS

**IT IS FURTHER ORDERED** that Judgment Defendants, Judgment Defendants' officers, agents, employees, independent contractors, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      In connection with the advertising, marketing, promoting, offering, or sale of any Business Venture, misrepresenting, or assisting others in misrepresenting, including by providing

others with the means and instrumentalities with which to misrepresent, expressly or by implication:

     1.     The amount of sales, income, or profits that a participant can expect to achieve;

     2.     The amount of sales, income, or profits that participants have actually achieved;

     3.     That participants can expect to recoup their investment;

     4.     That all or most of the participants who fail to make significant income failed to devote substantial or sufficient effort;

     5.     That participants will or are likely to receive substantial income; and

     6.     Any other fact material to consumers concerning participation in the Business Venture, such as:  the total costs to participate, including trainings, brochures, sales aids, and promotional merchandise; any material restrictions, limitations, or conditions on Benefits from the Business Venture; or any material aspect of the performance, efficacy, nature, or central characteristics of Business Venture participation.

B.     In connection with the advertising, marketing, promoting, offering for sale, or sale of any Business Venture, making any representation, expressly or by implication, regarding the amount or likelihood of sales, income, or profits that a participant can expect to earn unless the representation is non-misleading and, at the time such representation is made, Judgment Defendants possess and rely upon competent and reliable evidence sufficient to substantiate that

the representation is true.  Such implied representations include the use of images and other representations of lifestyles.

      C.      In connection with the advertising, marketing, promoting, or offering for sale of any good or service, misrepresenting or assisting others in misrepresenting, including by providing others with the means and instrumentalities with which to misrepresent, expressly or by implication:

          1.      The total costs to purchase, receive, or use, and the quantity of, the goods or services;

          2.      Any material restriction, limitation, or condition to purchase, receive, or use the goods or services;

          3.      Any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services;

          4.      Any material aspect of the nature or terms of Judgment Defendants' refund, cancellation, exchange, or repurchase policies; or

          5.      Any other material fact.

**IV.**

**PROHIBITED REPRESENTATIONS:  REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION**

      **IT IS FURTHER ORDERED** that Judgment Defendants, Judgment Defendants' officers, agents, employees, independent contractors, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently

restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product:

      A.      Cures, mitigates, or treats Alzheimer's, Parkinson's disease, or brain injury or diseases, including Chronic Traumatic Encephalopathy;

      B.      Prevents, lowers the risk of, or treats concussions; or

      C.      Cures, mitigates, or treats any disease, unless the representation is non-misleading and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true. For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

**V.**

**PROHIBITED REPRESENTATIONS:   OTHER HEALTH-RELATED CLAIMS**

**IT IS FURTHER ORDERED** that Judgment Defendants, Judgment Defendants'
officers, agents, employees, independent contractors, and attorneys, and all other persons in
active concert or participation with any of them, who receive actual notice of this Order, whether
acting directly or indirectly, in connection with the manufacturing, labeling, advertising,
promotion, offering for sale, sale, or distribution of any Covered Product, are permanently
restrained and enjoined from making, or assisting others in making, expressly or by implication,
including through the use of a product or program name, endorsement, depiction, or illustration,
any representation, other than representations covered under the section of this Order entitled
"Prohibited Representations:  Regarding Health-Related Claims Requiring Human Clinical
Testing for Substantiation," about the health benefits, performance, or efficacy of any Covered
Product, including any representation that such product prevents, lowers the risk of, or treats
Alzheimer's, Parkinson's disease, brain injury or diseases, including Chronic Traumatic
Encephalopathy, concussion, or any other disease, unless the representation is non-misleading,
and, at the time of making such representation, they possess and rely upon competent and
reliable scientific evidence that is sufficient in quality and quantity based on standards generally
accepted by experts in the relevant disease, condition, or function to which the representation
relates, when considered in light of the entire body of relevant and reliable scientific evidence, to
substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests,
analyses, research, or studies:  (1) that have been conducted and evaluated in an objective

11

manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## VI.

### PROHIBITED REPRESENTATIONS REGARDING TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Judgment Defendants, Judgment Defendants' officers, agents, employees, independent contractors, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A.      That any Covered Product is scientifically or clinically proven to lower the risk of, prevent, cure, mitigate, or treat any disease, including Alzheimer's, Parkinson's disease, or brain injury or diseases, including Chronic Traumatic Encephalopathy;

B.      That any Covered Product is scientifically or clinically proven to lower the risk of, prevent, or treat concussions;

C.      That the performance or benefits of any product are scientifically or clinically proven or otherwise established; or

D.      The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## VII.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Judgment Defendants rely to substantiate any claim covered by this Order, Judgment Defendants must secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test;

13

all raw data collected from participants enrolled in the test, including any participants who did

not complete the test; source documents for such data; any data dictionaries; and any case report

forms;

     D.     All documents referring or relating to any statistical analysis of any test data,

including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on

any test data; and

     E.     All documents referring or relating to the sponsorship of the test, including all

communications and contracts between any sponsor and the test's researchers.

*Provided, however,* the preceding preservation requirement does not apply to a reliably

reported test, unless the test was conducted, controlled, or sponsored, in whole or in part

by:  (1) any Judgment Defendant; (2) any Judgment Defendant's officers, agents, representatives,

or employees; (3) any other person or entity in active concert or participation with any Judgment

Defendant; (4) any person or entity affiliated with or acting on behalf of any Judgment

Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the

foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

     For purposes of this Section, "reliably reported test" means a report of the test has been

published in a peer-reviewed journal, and such published report provides sufficient information

about the test for experts in the relevant field to assess the reliability of the results.

     For any test conducted, controlled, or sponsored, in whole or in part, by Judgment

Defendants, Judgment Defendants must establish and maintain reasonable procedures to protect

the confidentiality, security, and integrity of any personal information collected from or about

participants.  These procedures must be documented in writing and must contain administrative,

technical, and physical safeguards appropriate to Judgment Defendants' size and complexity, the nature and scope of Judgment Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## VIII.

## <u>FDA-APPROVED CLAIMS</u>

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Judgment Defendants, Judgment Defendants' officers, agents, employees, independent contractors, and attorneys, or all other persons in active concert or participation with any of them from:

A.      For any Drug product, making a representation that is approved for inclusion in labeling for such Drug product under a new drug application or biologics license application approved by the Food and Drug Administration, or, for any nonprescription Drug product authorized by Section 505G of the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 355h, to be marketed without an approved new drug application, making a representation that is permitted or required to appear in its labeling in accordance with  Section 505G(a)(1)-(3) of the FDCA, 21 U.S.C. § 355h(a)(1)-(3), or a final administrative order under Section 505G(b) of the FDCA, 21 U.S.C. § 355h(b); and

B.      For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## IX.

## <u>NOTICE TO BRAND PARTNERS</u>

**IT IS FURTHER ORDERED** that, within seven (7) days of entry of this Order, Judgment Defendants shall email notice in the form shown on Attachment A to this Order to all persons who were Neora Brand Partners at any time between January 1, 2011, and the date of entry of this Order with the subject line "What the Neora Court Order Means for Brand Partners Like You."  Within fifteen (15) days of entry of this Order, Judgment Defendants shall mail the form shown on Attachment B to this Order via first-class mail, postage prepaid with address forwarding requested, to the last known mailing address of all persons who were Neora Brand Partners at any time between January 1, 2011, and the date of entry of this Order.  No information other than that contained in Attachment A and Attachment B shall be included in or added to the notice required by this Section, nor shall any other materials be transmitted with the notice.  Judgment Defendants, Judgment Defendants' officers, agents, employees, independent contractors, and attorneys, or all other persons in active concert or participation with any of them, shall make no other representation(s) contrary to, inconsistent with, or in mitigation of, the notices.

## X.

## <u>ORDER ACKNOWLEDGMENTS</u>

**IT IS FURTHER ORDERED** that Judgment Defendants obtain acknowledgments of receipt of this Order:

A.      Each Judgment Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of

perjury.

B.      For five (5) years after entry of this Order, Defendant Olson for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Defendant Neora, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Judgment Defendant delivered a copy of this Order, that Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XI.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Judgment Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Judgment Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Judgment Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Judgment Defendant;

17

(b) identify all of that Judgment Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant Olson must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Judgment Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Defendant Olson must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Defendant Olson performs services whether as an employee or otherwise and any entity in which Defendant Olson has any ownership interest; and (c) describe in detail Defendant Olson's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For twenty (20) years after entry of this Order, each Judgment Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following:

1.      Each Judgment Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of Defendant Neora or any entity that Judgment Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or

dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Defendant Olson must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Defendant Olson performs services whether as an employee or otherwise and any entity in which Defendant Olson has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Judgment Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Judgment Defendant within fourteen (14) days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. Neora*, FTC Matter No. X200006.

## XII.

## <u>RECORDKEEPING</u>

**IT IS FURTHER ORDERED** that Judgment Defendants must create certain records for twenty (20) years after entry of the Order, and retain each such record for five (5) years. Specifically, Defendant Neora and Defendant Olson for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.   Accounting records showing the revenues from all goods or services sold;

B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.   Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.   A copy of each unique advertisement or other marketing material.

## XIII.

## <u>COMPLIANCE MONITORING</u>

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Judgment Defendants' compliance with this Order:

A.   Within fourteen (14) days of receipt of a written request from a representative of the Commission, each Judgment Defendant must:  submit additional compliance reports or other

20

requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Judgment Defendant. Judgment Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Judgment Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Judgment Defendants or any individual or entity affiliated with Judgment Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendant Olson, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV.

## <u>RETENTION OF JURISDICTION</u>

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.


**SO ORDERED** this _____ day of _____, 2022.


_____

**UNITED STATES DISTRICT JUDGE**

## ATTACHMENT A

Judgment Defendants shall email the following notice pursuant to Section IX of this Order to all persons who were Neora Brand Partners at any time between January 1, 2011, and the date of entry of this Order.  If a Brand Partner has multiple email addresses on record with Judgment Defendants, Judgment Defendants shall email the notice to all such addresses.

Judgment Defendants shall replace "[Name]" with the name of each recipient, shall append to the words "this case" an active hyperlink to https://www.ftc.gov/legal-library/browse/cases-proceedings, and append to the words "Multi-Level Marketing Businesses and Pyramid Schemes an active hyperlink to consumer.ftc.gov/articles/multi-level-marketing-businesses-pyramid-schemes.

## EMAIL NOTICE TO BRAND PARTNERS

Sender: support@neora.com

Email Subject: FTC v. Neora: What The Court Order Means For You

Dear [Name]:

The Federal Trade Commission (FTC), the nation's consumer protection agency, sued us and said we broke the law by

1.  lying about the health benefits of Neora EHT,
2.  running an illegal pyramid scheme, and
3.  lying about how much money Brand Partners make.

A federal judge issued a court order against us and our CEO, Jeff Olson. The order bans us from operating a multi-level marketing business. It also requires us to tell the truth about how much money Brand Partners make.

We told Brand Partners they would make a lot of money, even though we knew that wasn't true. **The truth is most Brand Partners lose money.**

You can learn more about this case on the FTC's website.

Before you join a multi-level marketing program, read the FTC's article, Multi-Level Marketing Businesses and Pyramid Schemes.

1

<u>**ATTACHMENT B**</u>

       Pursuant to Section IX of this Order, Judgment Defendants shall mail the following notice via first-class mail, postage prepaid with address forwarding requested, to the last known mailing address of all persons who were Neora Brand Partners at any time between January 1, 2011, and the date of entry of this Order.  If a Brand Partner has multiple mailing addresses on record with Judgment Defendants, Judgment Defendants shall mail the notice to all such addresses.  Bracketed text ([ ]) should be followed, inserted, or updated accordingly.

<u>**MAIL NOTICE TO BRAND PARTNERS**</u>

[Minimum 12-point Times New Roman font]

[Neora Letterhead]

[Date]

[Name]
[Address]
[City/State/Zip Code]

       RE:    What the Neora Court Order Means for Brand Partners Like You

Dear [Name]:

The Federal Trade Commission (FTC), the nation's consumer protection agency, sued us and said we broke the law by

1.  lying about the health benefits of Neora EHT,
2.  running an illegal pyramid scheme, and
3.  lying about how much money Brand Partners make.

A federal judge issued a court order against us and our CEO, Jeff Olson. The order bans us from operating a multi-level marketing business. It also requires us to tell the truth about how much money Brand Partners make.

We told Brand Partners they would make a lot of money, even though we knew that wasn't true. **The truth is most Brand Partners lose money.**

You can learn more about this case on the FTC's website. Go to www.ftc.gov and search for "FTC v. Neora".

Before you join an MLM program, read the FTC's advice about multi-level marketing businesses and pyramid schemes at www.ftc.gov/mlm.

1