# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

FEDERAL TRADE COMMISSION,     )
                                     )
                                     )
       Plaintiff,             )     Civil Action No. 3:20-cv-01979-M
                                     )
v.                                 )
                                     )
NEORA, LLC, *et al.*,            )
                                     )
       Defendants.         )
                                     )

## PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO NEORA'S MOTION FOR FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………………....ii

I. THE FTC'S POSITION WAS SUBSTANTIALLY JUSTIFIED THROUGHOUT THE LITIGATION.................................................................................................................. 2

    A. The Legal Standard .................................................................................................. 2

    B. The FTC's Position Was Substantially Justified at Every Stage of the Litigation ............ 3

        1. Abundant Evidence Supported the FTC's Complaint Counts ...................................... 3

            a. The FTC's claim that Defendants operated an unlawful pyramid scheme ....... 5

            b. The claims that Defendants deceived consumers about income and EHT ....... 7

        2. Genuine Disputes Existed Throughout the Litigation .................................................. 9

        3. The FTC's Position Was Consistent With the Majority View .................................. 11

        4. Neora's Arguments Are Meritless ........................................................................... 13

II. SPECIAL CIRCUMSTANCES RENDER AN AWARD TO NEORA UNJUST ................ 14

III. NEORA'S FEE REQUEST IS UNREASONABLE ........................................................ 15

    A. The Legal Standard ................................................................................................ 16

    B. The Court Should Deduct Ineligible Fees and Expenses .................................................. 17

        1. Pre-Litigation Fees and Expenses Are Not Reimbursable......................................... 17

        2. Unreasonably High Rates Charged by Vandaele's Assistants Are Not Reimbursable .................................................................................................................. 18

        3. Unitemized Fees and Expenses Are Not Reimbursable ............................................. 18

        4. Fees and Expenses for Other Lawsuits Are Not Reimbursable ................................. 19

    C. Fees Attributable to Olson Are Unrecoverable ............................................................. 20

    D. Fees Paid By Third Parties Are Unrecoverable ............................................................. 20

    E. Neora's Remaining Fees Are Non-Compensable or Inadequately Documented ............. 21

## TABLE OF AUTHORITIES

**Cases**

*Abusamhadaneh v. Taylor*,
    2013 WL 193778 (E.D. Va. Jan. 17, 2013) ........................................................................ 16, 20

*Ardestani v. INS*,
    502 U.S. 129 (1991) ........................................................................................................................ 1

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...................................................................................................................... 20

*Cheng v. McCredit*,
    1995 WL 430953 (N.D. Ill. July 11, 1995) ................................................................................ 23

*Cobell v. Norton*,
    407 F. Supp. 2d 140 (D.D.C. 2005) ...................................................................................... 16, 18

*Copeland v. Marshall*,
    641 F.2d 880 (D.C. Cir. 1980) .................................................................................................... 16

*Dalles Irrigation Dist. v. United States*,
    2010 WL 785395 (Fed. Cl. Mar. 2, 2010) ................................................................................ 17

*Davidson v. Veneman*,
    317 F.3d 503 (5th Cir. 2003) ................................................................................................. passim

*Forest Conservation Council v. Devlin*,
    994 F.2d 709 (9th Cir. 1993) .................................................................................................. 17, 21

*FTC v. Amy Travel Serv., Inc.*,
    875 F.2d 564 (7th Cir. 1989) ...................................................................................................... 12

*FTC v. BurnLounge, Inc.*,
    753 F.3d 878 (9th Cir. 2014) ......................................................................................... 5, 6, 11, 12

*FTC v. Credit Bureau Center, LLC*,
    No. 17-194 (N.D. Ill.) .................................................................................................................. 19

*FTC v. Figgie Int'l, Inc.*,
    994 F.2d 595 (9th Cir. 1993) ...................................................................................................... 12

*FTC v. Fin. Freedom Processing, Inc.*,
    No. 10-2446, 2014 WL 12570237 (N.D. Tex. Apr. 22, 2014) ........................................... 2, 3, 12

*FTC v. Five–Star Auto Club, Inc.*,
  97 F. Supp. 2d 502 (S.D.N.Y. 2000) ........................................................................... 9

*FTC v. Kuykendall*,
  371 F.3d 745 (10th Cir. 2004) ..................................................................................... 12

*FTC v. Lifewatch Inc.*,
  176 F. Supp. 3d 757 (N.D. Ill. 2016) ........................................................................... 12

*FTC v. Magazine Sols., LLC*,
  2009 WL 690613 (W.D. Pa. Mar. 16, 2009) ................................................................ 12

*FTC v. On Point Global LLC*,
  2021 WL 4891334 (S.D. Fla. Sept. 23, 2021) ............................................................. 12

*FTC v. Partners in Health Care Ass'n, Inc.*,
  189 F. Supp. 3d 1356 (S.D. Fla. 2016) ........................................................................ 12

*FTC v. SkyBiz.com, Inc.*,
  2001 WL 1673645 (N.D. Okla. Aug. 31, 2001) ........................................................... 12

*FTC v. Vemma Nutrition Co.*,
  2015 WL 11118111 (D. Ariz. Sept. 18, 2015) ............................................................. 12

*Genuine Parts Co. v. FTC*,
  445 F.2d 1382 (5th Cir. 1971) ..................................................................................... 17

*Goodman v. FTC*,
  244 F.2d 584 (9th Cir. 1957) ................................................................................... 9, 12

*Griffon v. U.S. Dept. of Health & Human Servs.*,
  832 F.2d 51 (5th Cir. 1987) ........................................................................................... 2

*Guidry v. Clare*,
  442 F. Supp. 2d 282 (E.D. Va. 2006) ........................................................................... 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................ 16, 23

*Hopkins v. Cornerstone Am.*,
  545 F.3d 338 (5th Cir. 2008) ....................................................................................... 12

*In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*,
  913 F.2d 1118 (5th Cir. 1990) ..................................................................................... 21

*In re Itron, Inc.*,
    883 F.3d 553 (5th Cir. 2018) ........................................................................... 21

*In re Jordan*,
    364 B.R. 634 (Bankr. N.D. Tex. 2007) ........................................................... 11

*In re Koscot Interplanetary, Inc.*,
    86 F.T.C. 1106 (1975) ................................................................................. 5, 12

*Koehler v. United States*,
    153 F.3d 263 (5th Cir. 1998) ............................................................................. 1

*Leroy v. City of Houston*,
    906 F.2d 1068 (5th Cir. 1990) ........................................................................ 20

*Martini v. Fed. Nat. Mortg. Ass'n*,
    977 F. Supp. 482 (D.D.C. 1997) .................................................................... 22

*Medrano v. Barnhart*,
    149 F. App'x 323 (5th Cir. 2005) ..................................................................... 3

*Morris Jewelers, Inc. v. Gen. Elec. Credit Corp.*,
    714 F.2d 32 (5th Cir. 1983) ............................................................................ 12

*Nail v. Martinez*,
    391 F.3d 678 (5th Cir. 2004) ........................................................... 3, 9, 11, 15

*Nerium Int'l, LLC v. FTC*,
    2020 WL 5217152 (N.D. Ill. Aug. 31, 2020) ................................................ 19

*Nkenglefac v. Garland*,
    64 F.4th 251 (5th Cir. 2023) ................................................................ 1, 2, 3, 14

*Okla. Aerotronics, Inc. v. United States*,
    943 F.2d 1344 (D.C. Cir. 1991) ..................................................................... 23

*Okla. Press Publ. Co. v. Walling*,
    327 U.S. 186 (1946) ....................................................................................... 17

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) .......................................................................... 6

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ................................................................................. passim

*Prince v. Colvin,*
　94 F. Supp. 3d 787 (N.D. Tex. 2015) .................................................................... 1, 14, 16, 22

*Ramos v. Lamm,*
　713 F.2d 546 (10th Cir. 1983) ............................................................................................ 16

*Reyes v. Nations Title Agency of Ill., Inc.,*
　2001 WL 687451 (N.D. Ill. June 19, 2001) ........................................................................ 16

*Role Models Am., Inc. v. Brownlee,*
　353 F.3d 962 (D.C. Cir. 2004) ........................................................................................... 23

*Sims v. Apfel,*
　238 F.3d 597 (5th Cir. 2001) ............................................................................................... 2

*Spawn v. W. Bank–Westheimer,*
　989 F.2d 830 (5th Cir. 1993) ............................................................................................... 9

*Standard Distrib. v. FTC,*
　211 F.2d 7 (2d Cir. 1954) .................................................................................................... 9

*State of La., ex rel. Guste v. Lee,*
　853 F.2d 1219 (5th Cir. 1988) ...................................................................................... 14, 15

*Terrell v. Shalala,*
　1995 WL 307157 (N.D. Ill. May 15, 1995) ....................................................................... 23

*Tonti Prop. v. Sherwin-Williams Co.,*
　2000 WL 506015 (E.D. La. Apr. 27, 2000) ....................................................................... 21

*Unification Church v. Immigration & Naturalization Serv.,*
　762 F.2d 1077 (D.C. Cir. 1985) ......................................................................................... 15

*United States v. Anaconda Co.,*
　445 F. Supp. 486 (D.D.C. 1977) ........................................................................................ 17

*United States v. Davis,*
　636 F.2d 1028 (5th Cir. 1981) ........................................................................................... 21

*United States v. Pecore,*
　664 F.3d 1125 (7th Cir. 2011) ............................................................................................. 3

*Von Clark v. Butler,*
　916 F.2d 255(5th Cir. 1990) .............................................................................................. 16

*W. Watersheds Project v. U.S. Dep't of the Interior*,
  677 F.3d 922 (9th Cir. 2012)...................................................................... 17

*W.M.V.C. v. Barr*,
  926 F.3d 202 (5th Cir. 2019)............................................................... passim

*Watkins v. Fordice*,
  7 F.3d 453 (5th Cir. 1993)...................................................................... 16

*Webster v. Omnitrition Int'l, Inc.*,
  79 F.3d 776 (9th Cir. 1996).................................................................. 5, 6

**Statutes**

28 U.S.C. § 2412...................................................................... passim

The Federal Trade Commission (FTC) opposes Neora's motion for fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Neora's motion should be denied for three independent reasons. *First*, the FTC's position was substantially justified—as evidenced by the Court's own rulings throughout this litigation, including its denial of summary judgment or a directed verdict to Neora. The final decision against the FTC, while within the Court's discretion, was factbound, and all the FTC claims were reasonably supported—both legally and factually. *Second*, the circumstances of this case render any award to Neora unjust because Neora's co-defendant, Jeffrey Olson—Neora's owner and CEO, and the principal actor in both Neora's challenged conduct and its legal defense—is ineligible for an EAJA award as his net worth ████████████████. *Third*, Neora demonstrably has failed to provide the required support for the fees and expenses that it seeks. The majority of Neora's claimed fees and expenses are altogether non-compensable under EAJA, and even those that may be compensable are inadequately documented or plainly unreasonable.

## ARGUMENT

EAJA provides a limited waiver of the United States' sovereign immunity and, as such, must be narrowly construed in favor of the government. *Ardestani v. INS*, 502 U.S. 129, 137 (1991); *W.M.V.C. v. Barr*, 926 F.3d 202, 208 (5th Cir. 2019); *Koehler v. United States*, 153 F.3d 263, 265-66 (5th Cir. 1998). Section 2412(d) of EAJA provides for awarding attorney's fees and expenses—*but only if* the government's position is *not* "substantially justified" and *no* "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see Nkenglefac v. Garland*, 64 F.4th 251, 253 (5th Cir. 2023); *Prince v. Colvin*, 94 F. Supp. 3d 787, 793 (N.D. Tex. 2015). EAJA requests must include "an itemized statement" of the "actual time expended and the rate" used to calculate the requested amount. 28 U.S.C. § 2412(d)(1)(B). The amount must be reasonable and may be awarded only to eligible parties. *Id.* §§ 2412(d)(2)(A)-(B).

I. **THE FTC'S POSITION WAS SUBSTANTIALLY JUSTIFIED THROUGHOUT THE LITIGATION**[1]

   A. **The Legal Standard**

An EAJA application must be rejected if the government's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court has held that "substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *accord Nkenglefac*, 64 F.4th at 253. "This standard is not overly stringent." *W.M.V.C.*, 926 F.3d at 208. The government's position "can be justified even though it is not correct," so long as "a reasonable person could think it correct." *Pierce*, 487 U.S. at 566 n.2. Thus, "[t]he mere fact that the government lost … does not alone demonstrate that its position was not substantially justified." *W.M.V.C.*, 926 F.3d at 208; *see, e.g.*, *FTC v. Fin. Freedom Processing, Inc.*, No. 10-2446, 2014 WL 12570237, *1 (N.D. Tex. Apr. 22, 2014) (EAJA fees denied despite FTC losses in district court and on appeal).

EAJA's "substantially justified" standard is "separate and distinct from whatever legal standards governed the merits phase of the case." *Griffon v. U.S. Dept. of Health & Human Servs.*, 832 F.2d 51, 52 (5th Cir. 1987). EAJA applications are evaluated "under the totality of the circumstances, meaning that 'if the government's position as a whole was reasonable, a prevailing party may not recover EAJA fees even though some of the government's actions or arguments were without merit.'" *Nkenglefac*, 64 F.4th at 253 (quoting *W.M.V.C.*, 926 F.3d at 210); *accord Sims v. Apfel*, 238 F.3d 597, 602 (5th Cir. 2001).

The government's position "will be deemed to be substantially justified 'if there is a genuine dispute.'" *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (quoting *Pierce,* 487

---

[1] All pincites for any docket filings are to the page numbers in the CM/ECF header.

U.S. at 565); *accord Nail v. Martinez*, 391 F.3d 678, 684 (5th Cir. 2004). A court must consider legitimate disputes in the evidence, therefore, even if it had ruled against the government on the merits. *United States v. Pecore*, 664 F.3d 1125, 1113-34 (7th Cir. 2011); *accord Medrano v. Barnhart*, 149 F. App'x 323, 324 (5th Cir. 2005). *See, e.g.*, *Financial Freedom*, 2014 WL 12570237 at *1 (FTC's position had legal and factual support under EAJA, even if it had failed to prove its case by a preponderance of the evidence).

### B.  The FTC's Position Was Substantially Justified at Every Stage of the Litigation

Here, the FTC's position was substantially justified because: (1) abundant evidence supported the FTC charges; (2) the Court recognized genuine disputes throughout the litigation; and (3) the FTC's positions on key subsidiary rulings against the FTC were justifiably grounded in past rulings from this and other courts.

### 1.   *Abundant Evidence Supported the FTC's Complaint Counts*

The FTC had a reasonable basis in fact and in law to prosecute this case through trial. *Pierce*, 487 U.S. at 565; *Nkenglefac*, 64 F.4th at 253. To prove that Neora operated a pyramid scheme, the FTC presented evidence that the participants—Neora's Brand Partners (BPs)—were rewarded for recruitment, not sales. Dkt. 331 at 10-21. The FTC's evidence included factual and expert testimony, documentary evidence, and Neora's own operational data and survey showing that BPs were incentivized and paid to recruit other participants, not to sell products; that BPs were motivated to (and did) join Neora to earn rewards, not for discounted products; and that BPs were incentivized to (and routinely did) buy products in furtherance of earning rewards. *Id*.

Likewise, to show that Neora made (and provided others with the means to make) deceptive claims, the FTC proffered evidence showing that Neora (and its BPs) falsely promised consumers significant income from becoming a BP, and falsely claimed EHT was scientifically shown to treat or prevent brain disease or injury. Dkt. 331 at 21-27. That evidence included

Neora's promotional and training materials (such as social media posts, videos, audio recordings, ads, emails, and BP presentations) containing the deceptive income and EHT claims; testimonial and documentary evidence showing that Defendants intended for BPs to promulgate those misrepresentations on Neora's behalf; expert scientific testimony that the EHT claims were false or unsubstantiated; Neora's own data showing that the BP income claims were false or unsubstantiated; and evidence showing that the income and EHT claims were material to consumers' decisions to join or to stay with Neora, and to purchase or sell EHT. *Id.*

The FTC also proffered dozens of consumer complaints, including complaints made to Neora itself, that explained that many BPs ended their relationship with Neora precisely because they had not earned the income that Defendants had promised them, and explained how BPs were misled about Neora's business opportunity. *See* Dkt. 283 at 5 nn.2-3, 7 (citing Ex. 608, 612-614, 893-896, 901-902). While the Court ultimately ruled those complaints inadmissible hearsay, we show further below, *infra* at 12, that the FTC was substantially justified in relying on this evidence because other courts have found consumer complaints admissible under an exception to the hearsay rule. The Court's opinion later suggested that its decision might have come out differently had such "evidence from actual BPs" been in the record. Dkt. 347 at 34.

As demonstrated below, the evidence outlined above was more than enough—had the Court found it persuasive—to establish the violations alleged in the FTC complaint.[2]

---

[2] Accordingly, Neora misreads the Court's references to the FTC providing "no evidence." *See* Dkt. 355 ("Mot.") at 18. In light of the evidence detailed above, going to every element of every claim, the more reasonable reading of the Court's opinion is that the FTC did not provide evidence sufficient to persuade the Court on those claims.

### a.   <u>The FTC's claim that Defendants operated an unlawful pyramid scheme</u>

The FTC presented evidence to meet both prongs of the *Koscot* test—which the Court agreed was the proper analytical framework for establishing an unlawful pyramid scheme. Dkt. 347 at 25-28; *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975). That evidence reasonably could have satisfied a factfinder that Neora ran an unlawful pyramid scheme—thereby meeting EAJA's "not overly stringent" standard for substantial justification. *W.M.V.C.*, 926 F.3d at 208. That the Court was unpersuaded by this evidence "does not alone demonstrate that [the FTC's] position was not substantially justified." *Id*.

Specifically, the FTC proffered abundant evidence for a factfinder reasonably to find that BPs paid money to Neora in return for (1) the right to sell Neora products, *and* (2) the right to receive, for recruiting other BPs, rewards unrelated to the sale of products to ultimate users.

As the first prong was undisputed, the parties' dispute centered on the second prong—the "*sine qua non*" of a pyramid scheme, Dkt. 347 at 25 (citing *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781–82 (9th Cir. 1996)). In particular, the Court held that a key question in this regard was whether BPs themselves are "ultimate users." Dkt. 347 at 31, 33. The FTC proffered evidence to show that BPs' product purchases were motivated, *at least in part*, by their desire to qualify for rewards—which, under well-established caselaw, rendered them *not* ultimate users. *See infra* note 11. Neora's sales data, for example, showed that BPs bought more products, over longer time periods, than did Neora's Preferred Customers (PCs), who were ineligible for such rewards. App. 839-41 (Ex. 878 at ¶¶ 15, 17).[3] Neora employees and BPs admitted that BPs commonly loaded up on inventory—often under family member names or even using fictitious

---

[3] The Court agreed that "evidence regarding distributor and non-distributor purchasing patterns was indicative of distributor motivations." Dkt. 347 at 34 n.119 (citing *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 884-85 (9th Cir. 2014)).

accounts—to qualify for rewards. *E.g.*, Dkt. 305 at 98:19-99:7 (BP testimony); App. 357-59 (Ex. 630 ("[E]very brand partner has had at one point or another 3 or 4 ADO's going to their house on a somewhat regular basis . . . .")).[4] Neora's training videos instructed BPs to maintain an auto-delivery order (ADO) to qualify for rewards. App. 435 (Ex. 723 at 8:13-26); App. 803 (Ex. 832 at 25:40-51); App. 806 (Ex. 841 at 13:50-58). Neora's own survey showed that BPs understood ADOs to be a BP "requirement," and both the survey and BP testimony confirmed that BPs overwhelmingly joined Neora to make money, *not* for product discounts. App. 380, 400 (Ex. 673); Dkt. 305 at 120:20-23 (BP testifying, "My goal for joining Neora was to make more money."). Finally, the FTC's expert testified that Neora's Compensation Plan incentivized BPs to buy products to advance in rank or qualify for bonuses like the 3URFree bonus, which *required* an ADO. App. 969 (Ex. 1442); App. 110-11 (Ex. K at 68:16-69:6).

The FTC's evidence also could have allowed a factfinder reasonably to find that BPs had the right to receive rewards "in return for recruiting." *BurnLounge*, 753 F.3d at 887; *accord Piambino v. Bailey*, 610 F.2d 1306, 1310 (5th Cir. 1980); *Omnitrition*, 79 F.3d at 782. The FTC's expert testified, after analyzing Neora's Compensation Plan, that most rewards were "locked" behind a recruitment threshold that *cannot* be replaced with sales. App. 106-131 (Ex. K at 60:4-12, 65:13-89:6). Neora's co-CEO testified that BPs must recruit to advance in rank, Dkt. 303 at 30:15-19, and that it was easier to qualify for rewards by buying than by selling products.

---

[4] *See also* App. 842-44 (Ex. 882 (A BP who "paid for orders under him to achieve a higher rank . . . stated that he has seen this done many times down through the years . . . .")); App. 845-47 (Ex. 884 ("Lots of BPs enroll their kids who don't do anything to benefit themselves. . . . Linda has paid for orders on at least 3 other people just in the past few months which benefits her rank and check so I don't see much of a difference especially since so many other BPs do the same thing.")); App. 849-51 (Ex. 887 (reporting one BP who bought rank through "21 PC accounts . . . [i]n addition to the accounts created using the name and email variation, fake addresses, her own purchase and others")).

6

Dkt. 306 at 165:12-22 (qualification threshold lower for own purchases than for sales). Neora's training material emphasized recruiting over sales. *E.g.*, App. 432 (Ex. 718 at 18:38-41 ("Recruiting is the lifeblood of our business")).[5] And Neora's own operational data showed that almost half of the top-earning BPs had five or fewer customers (and some had *none*), App. 411 (Ex. 673), while the top 0.5% of BP recruiters received more than 50% of the rewards, App. 356 (Ex. 546).

### b.   The claims that Defendants deceived consumers about income and EHT

The FTC proffered evidence showing that Defendants made claims about substantial income consumers purportedly would earn by joining Neora as BPs.[6] *See* Dkt. 331 at 6-9. The Court found it "undisputed," however, "that most Neora BPs earn nothing," and that income claims were material. Dkt. 347 at 47-48. The evidence thus met the elements of deception under the FTC Act. *Id*. Indeed, the Court agreed that at least "some … examples of income-based statements by Neora are problematic and misleading." *Id.* at 48.

---

[5] *See also* App. 307-354 (Ex. 544); App. 429 (Ex. 714); App. 430 (Ex. 715); App. 433 (Ex. 720); App. 434 (Ex. 721); App. 439 (Ex. 732); App. 806 (Ex. 841); App. 809 (Ex. 851); App. 810 (Ex. 856); App. 431 (Ex. 717 at 22:21-50); App. 438 (Ex. 730 at 43:38-43); App. 805 (Ex. 839 at 5:1-32); App. 807 (Ex. 843 at 17:18-43); App. 808 (Ex. 844 at 28:16-29:6).

[6] *See, e.g.*, App. 436 (Ex. 724 at 2:55-3:00 (Neora video instructing BPs to post about bonuses and luxury cars)); App. 437 (Ex. 725 at 19:40 (Neora video with BPs holding $25,000 to $500,000 checks)); App. 804 (Ex. 834 at 17:10-17:20 (Neora video stating BPs would earn six-figure incomes "if you can just get two new contacts a day")); App. 809 (Ex. 851 at 19:33-19:55 (Neora video discussing "hundreds of people" earning $50K to $1.5M bonuses)); App. 827 (Ex. 872 at 4:16-24 (video of Olson stating "we've had huge incomes generated" for "tens of thousands")); App. 302 (Ex. 444 at 0:18-0:29 (video of Olson stating "we have people who've earned … six-figure incomes")).

The FTC also introduced evidence of misleading EHT claims—including some made the week before trial—and offered party admissions and expert testimony showing the EHT disease treatment claims were unproven.[7]

Moreover, because many of the misleading income and EHT claims were made by BPs, the FTC proffered evidence that, in making those claims, BPs were acting as agents of Neora. The evidence included testimony from Neora's co-CEO Heisz enumerating the many aspects of BPs' business that are under Neora's direct control: how BPs represent Neora's brand and sell its products; sales and tax payment processing for BPs' sales; marketing; and BP training, performance evaluation, promotion, compensation, and discipline. App. 173-185 (Ex. O at 32:21-37:14; 38:4-44:1). Heisz also testified that Neora markets its business opportunity *only* through BPs. Dkt. 303 at 130:17-20. BP testimony also showed that Neora enlisted and relied heavily on BPs to train other BPs. Dkt. 305 at 76:16-77:7, 108:2-15, 136:21-137:12. Neora recruited BPs to appear (and vetted their remarks) at Neora's conferences. *Id*. at 128:1-129:7. And Neora's Policies and Procedures Manual set forth extensive rules governing the conduct of BPs, with consequences for violations that include termination.[8]

This evidence reasonably could have established both Neora's control over BPs and their consent for acting on its behalf—thus satisfying the conditions for BPs' agency. *See* Dkt. 347 at 42-43. Although Neora sought to distance itself from BPs' misleading claims, the FTC had a reasonable basis to assert that "[t]he law is clear that under the FTC Act, a principal is liable for misrepresentations made by his/her agents … *regardless of the unsuccessful efforts of the*

---

[7] *See* App. 440-802 (Ex. 739-824), App. 852-933 (Ex. 920-941); App. 136-149 (Ex. L at 85:9-91:18, 95:25-101:12); App. 154-162 (Ex. M at 31:23-35:12, 43:3-46:8); *see also* App. 186-87 (Ex. O at 122:6-123:25 (Neora's expert not disagreeing)).

[8] *See* App. 942-45, 949-50, 953, 956, 958 (Ex. 1423 ¶¶ 1.01, 1.16, 3.03, 3.04, 4.02-4.03, 7.09, 7.12, 9.19, 9.24, 11.02, 11.06, 12.06-12.07).

*principal to prevent such misrepresentations*." *FTC v. Five–Star Auto Club, Inc.*, 97 F. Supp. 2d

502, 527 (S.D.N.Y. 2000) (emphasis added); *accord Goodman v. FTC*, 244 F.2d 584, 592 (9th

Cir. 1957); *Standard Distrib. v. FTC*, 211 F.2d 7, 13 (2d Cir. 1954). The FTC was substantially

justified, therefore, because a factfinder reasonably *could* have found, on this evidence, that BPs,

in making the deceptive claims, acted as Neora's agents. *Pierce*, 487 U.S. at 566 n.2; *W.M.V.C.*,

926 F.3d at 208.

Lastly, the "means and instrumentalities" count derived from the deception counts, and it

is undisputed that Neora provided its BPs with the materials containing the challenged claims.

*See* Dkt. 331 at 9-10. A showing of substantial justification for the deception counts thus suffices

for the "means and instrumentalities" count as well.

### 2.  *Genuine Disputes Existed Throughout the Litigation*

Substantial justification is further evidenced in the Court's intermediate rulings finding

genuine disputes that only a full trial on the merits could resolve.

The Fifth Circuit repeatedly has held that the government's position will be deemed

substantially justified if the government shows that there was a genuine dispute in the case. *Nail*,

391 F.3d at 684; *Davidson*, 317 F.3d at 506 (citing *Pierce,* 487 U.S. at 565). Here, genuine

disputes abounded. Neora tested the strength of the FTC's position on numerous occasions, but

the Court either deferred ruling or found the FTC's position meritorious enough to proceed,

ultimately determining that a full trial on the merits was necessary. "The Government's success

in the early stages of the dispute is … relevant" to a showing of substantial justification.

*Davidson*, 317 F.3d at 507; *accord Spawn v. W. Bank–Westheimer,* 989 F.2d 830, 840 (5th Cir.

1993).

*First*, in denying Defendants' motion for judgment on the pleadings (Dkt. 55), the Court

resolved in the FTC's favor the very legal issue that ultimately formed a key part of the Court's

ruling on the deception counts; namely, whether Defendants' past conduct could suffice to justify an injunction. *See* Dkt. 347 at 50, 52. The Court held that it could. Dkt. 82 at 13-15.

*Second*, in Defendants' motion for partial summary judgment (Dkt. 154), the Court confronted the same issues that ultimately led to its decision on the pyramid count: *legally*, what factors should be considered under the second prong of *Koscot*; and *factually*, whether the evidence shows that those factors were met. After hearing argument, the Court denied the motion, finding it necessary to "hear the testimony, observe the persuasiveness of the witnesses, and make an informed judgment based upon all the evidence." Dkt. 281 at 72:9-15; *see* Dkt. 279.[9] Significantly, in opposing the FTC's own summary judgment motion, Defendants themselves insisted that genuine issues of fact existed on all the counts, and asserted the "need for a trial." Dkt. 226 at 8. That concession alone shows that the FTC's position was substantially justified. *See Davidson*, 317 F.3d at 506 (government's position "will be deemed to be substantially justified 'if there is a genuine dispute'") (quoting *Pierce,* 487 U.S. at 565).

*Third*, during trial, at the close of the FTC's case-in-chief, the Court denied defendants' Rule 52(c) motion—which sought dismissal of the pyramid claim—declining to make any findings or judgment until after Defendants put on their affirmative defense evidence. App. 167-68 (Ex. N at 45:13-46:19).

Indeed, even after the trial concluded, the case remained so close that the Court ordered post-trial briefing and instructed the parties to prepare for another hearing. App. 192 (Ex. P 67:3-

---

[9] The Court also deferred until trial several key evidentiary rulings, Dkt. 279, noting its need to "hear the evidence and objections in connection with the testimony." Dkt. 281 at 73:25-74:4. This included the FTC's challenge to Defendants' litigation survey (Dkt. 176 at 22-30; Dkt. 200 at 4), on which the Court eventually relied. Dkt. 347 at 32-33. Likewise, the Court deferred until trial significant pre-trial motions in limine by the FTC—which turned out to be key to the Court's final decision, *see, e.g.*, Dkt. 347 at 46, especially the motion to admit BP statements as those of a party opponent on an agency theory. Dkt. 285.

12). The Court's multiple rulings that a full trial—which lasted six days—was needed to resolve genuine disputes *necessarily* shows that the FTC's position throughout the litigation was substantially justified. *Nail*, 391 F.3d at 684; *Davidson*, 317 F.3d at 506.

That the Court eventually concluded that the FTC did not carry its evidentiary burden is not to the contrary. *Pierce*, 487 U.S. at 566 n.2; *W.M.V.C.*, 926 F.3d at 208. Indeed, the Court's opinion repeatedly pointed to the closeness of the parties' conflicting evidence. The Court noted, for example, that the survey that Neora proffered had relied on a "small number of BPs," Dkt. 347 at 32, and thus "potentially lacks the statistical rigor necessary to speak confidently as to the purchase motivation for all, or even a majority, of Neora's BPs," *id*. at 34. And "[t]he Court agree[d] with the FTC that some of its examples of income-based statements by Neora are problematic and misleading." *Id*. at 48.

### 3.  *The FTC's Position Was Consistent With the Majority View*

In a number of the Court's key subsidiary rulings against the FTC, the FTC's position was entirely consistent with prior judicial views on the issue. "Obviously," the Supreme Court has observed, "that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. … Nevertheless, a string of losses can be indicative; and *even more so a string of successes*." *Pierce*, 487 U.S. at 569 (emphasis added). Thus, where no binding precedent dictates otherwise, the government's reliance on rulings in similar cases to prosecute an action is entirely reasonable. *See, e.g.*, *In re Jordan*, 364 B.R. 634, 638-39 (Bankr. N.D. Tex. 2007).

Here, the FTC justifiably relied on court rulings in similar cases to support its positions that: (1) sales to PCs are not dispositive of whether Neora operated a pyramid scheme;[10] (2) BPs

---

[10] *See, e.g.*, *BurnLounge*, 753 F.3d at 887-88 (existence of retail sales does not negate proof of pyramid scheme); *accord Omnitrition*, 79 F.3d at 780-84; *FTC v. Vemma Nutrition Co*., 2015

are not ultimate users if motivated to buy Neora products, at least in part, by their desire to qualify for rewards; [11] (3) BPs are deemed agents of Neora; [12] and (4) consumer complaints are admissible evidence. [13]

While the FTC did not prevail on these issues in this particular instance, the FTC's position was nevertheless demonstrably supported by a near-identical "string of successes" on each issue, *Pierce*, 487 U.S. at 569, from this and other courts. That strongly evinces substantial justification of that position. *See Financial Freedom*, 2014 WL 12570237 at *2 (EAJA application denied even though court had denied all FTC pre-trial motions).

WL 11118111, at *3-*4 (D. Ariz. Sept. 18, 2015); *see also Koscot*, 86 F.T.C. at 1180 (focus of pyramid analysis is on rewards *for recruiting*—even if funded by retail sales). *See* Dkt. 197 at 23- 35, 36-38.

[11] *See, e.g.*, *BurnLounge*, 753 F.3d at 887 ("it is incorrect to conclude that all rewards paid on [internal] sales were related to the sale of products to ultimate users … [because] the scheme was set up to motivate [participants] through the opportunity to earn cash); *Vemma*, 2015 WL 11118111, at *4 (participants were not "end users" where "there is no way to unbundle" their consumption of "products as ultimate users from their desire to remain qualified for bonuses."). *See* Dkt. 144 at 73-78.

[12] *See, e.g.*, *FTC v. SkyBiz.com, Inc.*, 2001 WL 1673645, at *4-*5, *9 (N.D. Okla. Aug. 31, 2001) ("Associates" who sell products and recruit Associates into MLM company deemed agents); *Goodman*, 244 F.2d at 593 (salespeople deemed agents when "furnished with credentials" as representatives, "supplied with a sales kit" and "trained" to sell company product); *FTC v. Partners in Health Care Ass'n, Inc.*, 994 F. Supp. 3d 1356, 1366 (S.D. Fla. 2016) (marketers with "authority to advertise" products "on behalf of" company deemed agents); *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 775-76 (N.D. Ill. 2016) (telemarketers deemed agents because they "typically only sold" defendants' products and defendants purported to "monitor[] and control[]" them). *Cf. Hopkins v. Cornerstone Am.*, 545 F.3d 338, 342, 346 (5th Cir. 2008) ("sales agents, each of whom agrees to work as an independent contractor on a commission basis" in a "pyramid system," were employees under labor laws). *See* Dkt. 285 at 7-13.

[13] *See, e.g.*, *Morris Jewelers, Inc. v. Gen. Elec. Credit Corp.*, 714 F.2d 32, 34 (5th Cir. 1983) (consumer complaints admissible); *FTC v. Kuykendall*, 371 F.3d 745, 767 (10th Cir. 2004) (en banc) (consumer complaints admissible under residual exception to hearsay rule); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) ("letters from consumers" that "reported roughly similar experiences" admissible); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 576 (7th Cir. 1989) (consumer affidavits admissible); *accord FTC v. On Point Global LLC*, 2021 WL 4891334, at *3 (S.D. Fla. Sept. 23, 2021); *FTC v. Magazine Sols., LLC*, 2009 WL 690613, at *1 (W.D. Pa. Mar. 16, 2009). *See* Dkt. 283 at 8-14.

### 4.   *Neora's Arguments Are Meritless*

As demonstrated above, Neora's arguments that the FTC's position in this case cannot be substantially justified (Mot. 18-21) are without merit. Neora cites some authorities that, on their facts, found substantial justification lacking. *Id*. at 18-20. But none of those factbound decisions dictates the outcome here. Indeed, Neora does not point to a single binding authority that mandates a contrary FTC position on any of the complaint counts or key issues in this case. As detailed above, the FTC had ample legal (and factual) support for every one of its claims.

Neora's assertion that the FTC disregarded "its own guidance and regulations," Mot. 19, fares no better. To begin, Neora does not—and cannot—point to any agency regulation that conflicts with any FTC position in this case. Moreover, that an FTC litigation position may be viewed as in tension with past staff views on a particular issue in no way negates substantial justification, because staff views are not tantamount to law. Here, the Court cited to prior FTC staff guidance to support its ruling that BPs are deemed end users in this case, Dkt. 347 at 28-29, but those staff views are not the official position of the Commission, and indeed did not preclude other courts from ruling the opposite way in other cases, *see supra* notes 10 and 11. The reason is simple: FTC staff guidance is not law; it does not mandate court decisions, and thus cannot negate substantial justification. In *Davidson*, for example, the Fifth Circuit found substantial justification despite a conflict between applicable regulations and the agency's own Handbook. 317 F.3d at 506-07. The court explained that "[w]hile [it] did not accept the Government's argument that [its own] Handbook provision was interpretative, that does not mean the Government was unreasonable in its belief that there was no conflict between the Handbook and the regulation." *Id.*

The FTC's cited authorities provided that pyramid scheme participants whose motives are mixed are *not* end users, and that, in applying the *Koscot* test, courts should look to how the

rewards, not the company revenues, were earned. *See supra* notes 10 and 11. Absent any binding

precedent to the contrary, the FTC's reliance on those judicial decisions was reasonable—even if

those decisions could be deemed to be in tension with FTC staff's past guidance.

## II.   SPECIAL CIRCUMSTANCES RENDER AN AWARD TO NEORA UNJUST

Neora's application should be denied for the separate reason that "special circumstances

make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *Nkenglefac*, 64 F.4th at 253; *Prince*, 94 F.

Supp. 3d at 793. Specifically, co-defendant Olson is ineligible for EAJA recovery because his

net worth of nearly ████████, App. 18 (Ex. G), ██████████████████████████.

28 U.S.C. § 2412(d)(2)(B). Because of Olson's ownership and full control of Neora, his role as

the principal architect of its challenged conduct, and his full participation in Neora's defense, the

Court should deem Olson's net worth as inuring to the benefit of Neora for purposes of EAJA.

Under Fifth Circuit precedent, "the participation of a party ineligible for EAJA fees may

make a fee award for other eligible parties unjust." *State of La., ex rel. Guste v. Lee*, 853 F.2d

1219, 1225 (5th Cir. 1988).[14] "When parties eligible for EAJA fees join parties ineligible for

EAJA fees," the court of appeals has instructed, "the district court must account for the free-rider

problems that will inevitably exist." *Id*. It explained that if the party ineligible for fees is "fully

willing and able" to litigate the action against the United States, "the parties eligible for EAJA

fees should not be able to take a free ride through the judicial process at the government's

expense." *Id*. Thus, the district court "should consider whether the eligible and ineligible parties

---

[14] Although the ineligible co-defendant in *Guste* was the State of Louisiana, the Court's analysis and its attendant instructions to district courts did not turn on the governmental nature of that co-defendant, and thus apply equally to private co-defendants like Olson. *See* 853 F.2d at 1223-25.

had overlapping but not coextensive interests … [and] whether the ineligible party was willing to commit a limited amount of resources to this action." *Id.*[15]

Here, because Olson's personal liability under the FTC Act derived from Neora's liability, his interest was indeed wholly "coextensive" with Neora's. *See* Dkt. 331 at 28. And, as the owner and chief executive of Neora, he was ultimately responsible for Neora's defense and thus its ultimate cost. Significantly, Olson's defense participation went well beyond his status as a principal of the corporate defendant: he personally participated in both the challenged conduct and the defense of that conduct—including by providing key testimony. *E.g.* Dkt. 144 at 78-79; Dkt. 239 at 28-29. Under these circumstances, his role is hardly "nominal or narrow," *Guste*, 853 F.2d at 1225, and his ineligibility under EAJA would render Neora's recovery unjust.

## III. NEORA'S FEE REQUEST IS UNREASONABLE

Even if the Court determines that an award is appropriate here, the Court should deny Neora's motion to the extent Neora has failed to show that its requested fees and expenses are reasonable. Specifically, the Court should (1) deduct $2,109,865.02 in categorically ineligible fees and expenses; (2) apply a 50% reduction to the remaining amount to account for the legal work equally performed for Olson—an ineligible party; (3) deduct any fees paid by third-party contributors; and (4) apply a 75% reduction rate to the remaining amount to account for the widespread deficiencies in Neora's documentation.

---

[15] The D.C. Circuit has addressed co-defendants' eligibility for EAJA fees differently, holding that the district court must decide who the real party in interest is and whether that party is eligible for an award. *Unification Church v. Immigration & Naturalization Serv.,* 762 F.2d 1077 (D.C. Cir. 1985). The Fifth Circuit disagreed, citing the statutory definition of "party." *Nail*, 391 F.3d at 682-84. It thus declined to apply the "real party in interest" formula to a defendant company whose president and sole stockholder exceeded EAJA's eligibility threshold. *Id*. But *Nail* did not preclude application of the *Guste* rule; indeed, the *Nail* court remanded that case for consideration of just such "special circumstances." *Id.* at 685.

### A. The Legal Standard

EAJA only allows a prevailing party's recovery of fees and expenses "incurred by that party in any civil action," if they are "reasonable." 28 U.S.C. §§ 2412(d)(1)(A), 2412(d)(2)(A). The claimant "has the burden of demonstrating that the hours claimed were reasonably expended on the prevailing claim through the presentation of adequately recorded time records as evidence." *Prince*, 94 F. Supp. 3d at 794 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990)); *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Compiling raw totals of hours spent" is therefore not enough, because "[i]t does not follow that the amount of time actually expended is the amount of time reasonably expended." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980); *accord Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).

Where a claimant's time entries are vague, generic, or inadequately documented, the court "may attempt to identify specific hours that should be eliminated." *Hensley*, 461 U.S. at 436-37; *see, e.g.*, *Reyes v. Nations Title Agency of Ill., Inc.*, 2001 WL 687451, *1 (N.D. Ill. June 19, 2001). Alternatively, the court "may simply reduce the award," *Hensley*, 461 U.S. at 436-37—such as by applying a percentage reduction. This is particularly appropriate where the court cannot, because of the way the fees are presented, distinguish between compensable and non-compensable time, or where line-by-line review of requested fees is "impracticable" because of a prevalence of deficiencies. *Abusamhadaneh v. Taylor*, 2013 WL 193778, *42 (E.D. Va. Jan. 17, 2013); *accord Cobell v. Norton*, 407 F. Supp. 2d 140, 160 (D.D.C. 2005). Overall, "[t]here is no precise rule or formula," and the "court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37.

### B. The Court Should Deduct Ineligible Fees and Expenses

#### 1. *Pre-Litigation Fees and Expenses Are Not Reimbursable*

The Court should deny $1,181,730.52 in requested fees related to work by Defendants'

expert, Walter Vandaele, and his assistants that took place before the filing of the Complaint.

EAJA reimburses only those fees and expenses incurred "in any civil action" in "any

court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A). A "civil action" commences

when a party files suit. *Cf. W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922,

926 (9th Cir. 2012) (a "civil action" is "a proceeding in a judicial court"). Pre-litigation activities

related to a government investigation like pre-complaint negotiations, as well as "pre-litigation

efforts to convince a government agency that its actions are misguided," are not reimbursable

under EAJA. *Forest Conservation Council v. Devlin*, 994 F.2d 709, 713 (9th Cir. 1993); *see*

*Dalles Irrigation Dist. v. United States*, 2010 WL 785395, at *11 (Fed. Cl. Mar. 2, 2010)

(claimant "cannot recover attorneys' fees for work related to negotiations with [agency] which

occurred prior to the time counsel began preparing the complaint."). The Fifth Circuit, too, has

acknowledged the clear "distinction recognized between investigative and adjudicative

proceedings" in FTC actions, the latter of which begins only when the agency files the

complaint. *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1388 (5th Cir. 1971); *see Okla. Press*

*Publ. Co. v. Walling*, 327 U.S. 186, 201 (1946) (purpose of investigation "is to discover and

procure evidence, not to prove a pending charge or complaint"); *accord United States v.*

*Anaconda Co.*, 445 F. Supp. 486, 496-97 (D.D.C. 1977).

Here, the relevant civil action began when the FTC filed its complaint in this Court on

November 1, 2019. Dkt. 1. Neora thus cannot recover $1,181,730.52 in fees and expenses for

expert work performed in 2018 and 2019 before the commencement of this action. During that

time, Vandaele assisted in responding to the FTC's investigation, not defending this litigation. A full accounting of the ineligible invoices in this category is detailed in Exhibit B. App. 4-7.

### 2. *Unreasonably High Rates Charged by Vandaele's Assistants Are Not Reimbursable*

Neora fails to justify the extraordinary rates sought for Vandaele's assistants. Neora seeks $500 per hour for research assistant Jack Staines—who neither is the named expert in this case nor has the credentials of Vandaele, for whom Neora seeks the same rate. Nor does Neora justify seeking $156-$415 per hour for "research and administrative support" work by often-unspecified persons for clerical tasks such as "Located and obtained articles," Dkt 356-2 at 156, 160 ($185 per hour), or "Preparing production documentation," *id.* at 195, 200 ($350 per hour). Indeed, most of the requested "support" time is unitemized altogether, such as "57.00 hours at $415 per hour," *id.* at 149, leaving the Court to guess at what services were performed and by whom. To account for these deficiencies, the Court should set all assistants' rates at $100 per hour—the rate sought for paralegals. As detailed in Exhibit B, that results in a deduction of $370,830.29 (excluding the pre-complaint work separately discussed above). App. 4-7.

### 3. *Unitemized Fees and Expenses Are Not Reimbursable*

The Court should deny a total of $533,938.95 in unitemized fees and expenses. First, Neora seeks $458,124.40 in vague expenses with inadequate itemization or description. For example, Neora lists $175,166.53 in one aggregate "expenses" line for 2021, with the descriptor "litigation services/other." Dkt. 356-2 at 412. Likewise, monthly invoices list "transportation" or "travel" expenses without indication of who incurred that expense, when, and for what purpose. Dkt. 356-1 at 124. A full accounting of these disallowed expenses is listed in Exhibit C. [16] App. 9.

---

[16] To the extent these entries may include some compensable work, the Court should decline to "undertake the futile task of separating [the] block entries into their constituent tasks and

Second, the Court should deduct $27,114.55 for attorneys' fees on invoice No. 50138366, as detailed in Exhibit D. App. 11. The invoice lists 133.90 hours of attorney time in bulk, with no description or time breakdown of the work performed. Dkt. 356-1 at 286-87.

Finally, Neora seeks $48,700 paid to Material Holdings for a litigation survey. All Neora provides for support are two invoices for $24,350 each, for "[i]nitial invoice representing 50% of fee" and "final invoice, covering the remaining 50% of the total fee." Dkt. 356-2 at 406-07. There is no way to know who performed what, when, for how many hours, and thus no way to assess whether that expense was reasonable. These unitemized charges should be excluded in their entirety.

### 4. *Fees and Expenses for Other Lawsuits Are Not Reimbursable*

Lastly, the Court should deny $23,365.26 in fees that Neora requests for work performed in different lawsuits altogether. These include: (1) *Nerium Int'l, LLC v. FTC*, No. 19-7189, 2020 WL 5217152 (N.D. Ill. Aug. 31, 2020)—a declaratory judgment action that Defendants filed against the FTC, which was dismissed for lack of subject matter jurisdiction;[17] (2) Neora's arbitrations against third parties such as former BPs Mark and Tammy Smith, and other unrelated persons;[18] and (3) a potential amicus brief in *FTC v. Credit Bureau Center, LLC*, No. 17-194 (N.D. Ill.),[19] a case that did not involve Neora at all. A full accounting of the time entries and associated fees for these actions is listed in Exhibit E. App. 13-15.

---

apportioning a random amount of time to each"—instead, excluding them entirely. *Cobell*, 407 F.Supp.2d at 160; *see Guidry v. Clare*, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006) ("lumping" time is "a proper basis for reducing the fee award because it prevents an accurate determination of the reasonableness of the time expended").

[17] *E.g.*, Dkt. 356-1 at 228 (Ku billing for review of "complaint in lawsuit in [N.D. Ill.]").

[18] *E.g.*, Dkt. 356-1 at 410 (Burbach billing for proceedings "adverse to Mark & Tammy Smith").

[19] *E.g.*, Dkt. 356-1 at 218 (Burbach billing for "preparation for and attendance on Credit Bureau/AMG amicus brief call").

### C.  Fees Attributable to Olson Are Unrecoverable

Half of Neora's remaining requested fees are unrecoverable because the defense work was equally performed for Olson, who is precluded from recovering fees under EAJA.

None of the attorneys' or experts' time entries separated the work for Neora from that for Olson. That is unsurprising: Because Olson's liability under the FTC Act is derivative from that of Neora, every issue concerning Neora's liability also related to Olson's. That the work was all billed to Neora, not Olson, is irrelevant; the work equally benefited, and was necessary for, Olson—a statutorily ineligible party, *see supra* at 14-15. To account for this deficiency, the Court should reduce any remaining eligible fees by 50%.

### D.  Fees Paid By Third Parties Are Unrecoverable

Neora has failed to show that its requested fees were not paid by third parties. EAJA awards should "not produce windfalls to attorneys." *Leroy v. City of Houston*, 906 F.2d 1068, 1078-79 (5th Cir. 1990) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). EAJA, thus, does not permit awards of fees paid by third parties. *See, e.g.*, *Abusamhadaneh*, 2013 WL 193778, at *42.

Here, it is undisputed that third parties funded part of Neora's legal expenses. Neora's co-CEO Heisz admitted in a deposition that Mannatech, another MLM firm, "made a contribution to … [t]he fund that supported some of our legal expenses." App. 22 (Ex. H (11/30/2021 Heisz Tr.) at 200:4-10). Heisz further admitted that "other companies made contributions to that fund." *Id.* at 200:11-13. Contributions to "legal expenses related to the FTC cases" were held in trust by Neora's counsel. App. 28 (Ex. I at 1081734).

Neora has provided no accounting of that funding, however, so it is unknown whether third parties paid 1% or 99% of Neora's requested fees. In discovery, Defendants objected, on privilege and other grounds, to revealing the source and amounts of those contributions. App. 95

20

(Ex. J at 4); App. 22 (Ex. H at 200:11-20). That information is not privileged,[20] but even if it were, Neora has now waived the privilege by making a fee request that puts this information squarely at issue. *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018); *Tonti Prop. v. Sherwin-Williams Co.*, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000). Thus, at a minimum, the Court should require Neora to submit evidence that *it* paid the requested fees. Any fees that were paid by third parties should be deducted from Neora's award.

**E. Neora's Remaining Fees Are Non-Compensable or Inadequately Documented**

Neora seeks reimbursement for non-compensable activities such as lobbying government officials (*e.g.*, Attorneys General and their staff; state and U.S. Senators), advocacy organizations (*e.g.*, the Republican Attorneys General Association), and fundraising groups (*e.g.*, the Rule of Law Defense fund). *See, e.g.*, Dkt. 356-1 at 121, 131, 234, 347, 350. It also seeks reimbursement for efforts to improve its business reputation, such as "[a]nalysis of status of BBB accreditation, ranking, and complaints," and work "regarding current BBB ranking and wisdom of seeking accreditation." *See, e.g., id.* at 884. It likewise seeks reimbursement of significant time expended procuring and researching "third party funding," "litigation funding," and "litigation financing" and whether it is required to disclose such funding. *See, e.g., id.* at 141, 195, 241, 243, 262, 306, 325, 476, 482-84, 486. And it seeks fees for its press advocacy, such as time spent preparing co-CEO Heisz for an interview with Social Selling News. *Id.* at 121. All of these fees fall outside of EAJA. *See, e.g., Devlin*, 994 F.2d at 713 (lobbying efforts not compensable); *Martini v. Fed.*

---

[20] "Information concerning who paid [the attorneys' fees] and the amount, method or terms of payment" is not privileged. *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 913 F.2d 1118, 1123 (5th Cir. 1990); *see United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981) ("[f]inancial transactions between the attorney and client, including the compensation paid by or on behalf of the client," not privileged).

21

*Nat. Mortg. Ass'n*, 977 F. Supp. 482, 487 (D.D.C. 1997) (media outreach not compensable). These should be deducted in their entirety.

Aside from the specific examples above, non-compensable activities are impossible to quantify from Neora's documentation. Neora's counsel block-billed Neora, so compensable time cannot be segregated from non-compensable or unidentifiable time. Although Neora purportedly "backed out" some time "not directly related to the defense of Neora," Dkt. 356-1 at 6, ¶14, it identifies only monthly aggregate time excluded for each lawyer on only a handful of specific invoices (e.g., 44.9 hours for Burbach on invoice No. 40310824)—not individual time entries or even subdivisions of block time entries—so there is no way to ascertain if specific non-compensable time has been removed, *id.* at 6-8, ¶¶14-15 (showing purportedly excluded charges). And the majority of invoices have no "back outs" at all, despite including plainly non-compensable charges. *See, e.g.*, *id.* 6-8, ¶¶14-15, 865 (invoice No. 50657367 showing no "back outs," despite redacted entries). Because it is Neora's "burden of demonstrating that the hours claimed were reasonably expended *on the prevailing claim*," *Prince*, 94 F. Supp. 3d at 794 (emphasis added), entries that are not readily identifiable as relating to compensable time should be denied in their entirety. *See supra* note 16.

The remainder of Neora's time entries suffer from severe deficiencies that make it impossible to determine if they are compensable. *Hundreds* of submitted time entries, for example, are redacted with no way to determine what activities were billed, for how long, and whether they are reasonable. Neora seeks payment, for example, for entries described only as "Floating thought [REDACTED]," Dkt. 351-1 at 589; "Correspondence to/from [REDACTED]," *id.* at 865; and "Meeting with [REDACTED]," *id*. at 905. And block billing entries are often redacted in significant part. *See, e.g.*, *id*. at 119 (Burbach billing 5.1 hours for a multi-item entry

that is half-redacted); *id*. at 116 (Burbach billing 9.1 hours for substantially redacted multi-item entry).

These deficiencies are serious and pervasive. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Here, "[a] fixed reduction is appropriate given the large number of entries that suffer from" deficiencies such as "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). Courts have applied reductions ranging from 50% to 85% to account for such deficiencies. *See, e.g.*, *id.* (50% reduction); *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (40% reduction); *Terrell v. Shalala*, 1995 WL 307157, at *4 (N.D. Ill. May 15, 1995) (60% reduction); *Cheng v. McCredit*, 1995 WL 430953, at *4 (N.D. Ill. July 11, 1995) (75% reduction).

Given the volume of Neora's improper documentation (of over a thousand pages), and its charging hundreds if not thousands of hours of unreasonable or indeterminable time, the Court should apply a 75% reduction to the remaining time entries. As shown in detail in Exhibit F, such reduction should be taken *after* deducting for the categories of fees discussed in Sections III.B, III.C, and III.D above. App. 17. With these adjustments, the maximum amount that Neora can recover—without accounting for the unknown third-party funding—is $470,745.24. *Id.*

## CONCLUSION

Neora's motion should be denied in its entirety, because the FTC's position was substantially justified throughout the litigation, and because Jeffrey Olson's ineligibility for an award makes any award to Neora unjust. To the extent the Court is inclined to grant Neora's

motion, the award should be limited to, at most, $470,745.24 minus the amount of contributions that Neora received from third parties.


Respectfully Submitted,

Dated: February 14, 2023                     /s/ *Katharine Roller*
                                             KATHARINE ROLLER
                                             LISA W. BOHL
                                             RACHEL F. SIFUENTES
                                             Federal Trade Commission, Midwest Region
                                             230 S. Dearborn, Suite 3030
                                             Chicago, Illinois 60604
                                             Tel: (312) 960-5605
                                             Fax: (312) 960-5600
                                             Email: kroller@ftc.gov

                                             Attorneys for Plaintiff
                                             FEDERAL TRADE COMMISSION