## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        PLAINTIFF,<br>   v.<br><br>NEORA LLC, ET AL.,<br><br>        DEFENDANTS. | CIVIL ACTION NO. 3:20-cv-01979-M |

## NEORA LLC'S REPLY TO THE FEDERAL TRADE COMMISSION'S OPPOSITION (ECF NO. 364) TO IT'S MOTION FOR FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT (ECF NO. 355)

## **TABLE OF CONTENTS**

I.    FTC Fails to Show its Positions Were Substantially Justified. ................................. 2

   A.   The FTC Failed to Show its Pyramid Scheme Claim was Based on Anything More Than Assumption, Speculation, and Inapposite Authority. ................................................... 2

   B.   The FTC Fails to Justify Its Misrepresentation Claim. ........................................... 5

   C.   The FTC Fails to Justify its "Means and Instrumentalities" Claim. ..................... 5

   D.   That the FTC Avoided Summary Adjudication Cannot Carry the FTC's Substantial Justification Burden. ................................................................................................... 6

II.   The FTC Fails to Show Special Circumstances Exist. .......................................... 7

III.  Neora's Fee Request is Reasonable ......................................................................... 8

   A.   The Inclusion of Olson does not Warrant any Reduction. ....................................... 8

   B.   Fees and Expenses Incurred Prior to Filing are Recoverable. ................................ 9

   C.   Fees and Expenses for Other Lawsuits and Collateral Advocacy are Recoverable. ......... 10

   D.   Fees and Expenses Related to Neora's Third-Party Funding are Recoverable. ............... 12

   E.   The Rates Charged for Vandaele's Assistants are Reasonable. ........................... 13

   F.   FTC's Unitemized Fee and Expense Allegations are Baseless or Have been Cured. ....... 13

   G.   The FTC's Complaints About Neora's Block Billing and Redactions are Meritless. ....... 14

IV.   Neora's Request For Fees Related To This Reply ............................................... 15

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Atkinson v. Hawkins,*
   No. CV H-22-2652, 2023 WL 2227717 (S.D. Tex. Feb. 24, 2023) ..........................................3

*Dalles Irrigation Dist. V. United States,*
   91 Fed. Cl. 689 (Fed. Cl. Mar. 2, 2010)...................................................................................10

*Davidson v. Veneman,*
   317 F.3d 503 (5th Cir. 2003) ....................................................................................................6

*Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,*
   937 F.3d 764 (7th Cir. 2019) ..................................................................................................12

*Fed. Trade Comm'n v. Neora LLC,*
   No. 3:20-CV-01979-M, 2023 WL 8446166 (N.D. Tex. Sept. 28, 2023) ...................................2

*Forest Conservation Council v. Devlin,*
   994 F.2d 709 (9th Cir. 1993) ..................................................................................................10

*Guile v. United States,*
   422 F.3d 221 (5th Cir. 2005) ....................................................................................................7

*Herron v. Bowen,*
   788 F.2d 1127 (5th Cir. 1986) ..................................................................................................2

*Int'l Custom Prod., Inc. v. United States,*
   843 F.3d 1355 (Fed. Cir. 2016)..................................................................................................7

*KMS Fusion, Inc. v. United States,*
   39 Fed. Cl. 593 (1997) ............................................................................................................14

*In re Magna Cum Latte, Inc.,*
   No. 07-31814, 2007 WL 3231633 (Bankr. S.D. Tex. Oct. 30, 2007)........................................2

*Nerium International, LLC N/K/A Neora, LLC et al. v. Federal Trade Commission,*
   No. 1:19-cv-7189-SLE (N.D. Ill. Nov. 1, 2019), ECF. No. 1..................................................11

*Pollinator Stewardship Council v. U.S. En"t Prot. Agency,*
   2017 WL 3096105 (9th Cir. June 27, 2017) ............................................................................11

*Powell v. Commissioner,*
   891 F.2d 1167 (5th Cir. 1990) ............................................................................................9, 16

*Scarborough v. Nicholson,*
   19 Vet. App. 253 (2005) ..........................................................................................................15

*Smith v. Berryhill*,
　　2019 WL 1751835 (C.D. Cal. Feb. 20, 2019).......................................................................10

*State of La., ex rel. Guste v. Lee*,
　　853 F.3d 1219, 1225 (5th Cir. 1988) .....................................................................................8

*Texas Food Indus. Ass'n v. U.S. Dep't of Agric.*,
　　81 F.3d 578 (5th Cir. 1996) ....................................................................................................8

*Torres v. S.G.E. Mgmt.*,
　　805 F.3d 145 (5th Cir. 2015) (*Torres I*), rev'd on other grounds, 838 F.3d 629
　　(5th Cir. 2016) (en banc) (*Torres II*)....................................................................................4

*United States v. Jones*,
　　125 F.3d 1418 (11th Cir. 1997) ..............................................................................................9

*United States v. Thouvenot, Wade & Moerschen, Inc.*,
　　596 F.3d 378 (7th Cir. 2010) ..................................................................................................7

*Washington Dep't of Wildlife v. Stubblefield*,
　　739 F. Supp. 1428 (W.D. Wash. 1989)..................................................................................3

**Statutes**

28 U.S.C.S. § 2412(d)(2)(A).............................................................................................................9

**Other Authorities**

March 15, 2024 letter of Lois Greisman to the DSA
　　https://www.ftc.gov/system/files/ftc_gov/pdf/3.15.24%20Letter%28003%29.p
　　df ..............................................................................................................................................4

The FTC fails to rebut Neora's request for fees and expenses. ***First***, the FTC fails to show substantial justification. ECF. No. 364 ("Opp'n") at 2–14. The FTC's attempt to argue a basis in fact falters, as it boils down to the assertion that this Court did not mean what it said when it used the words "no evidence"— repeatedly—to describe what the FTC presented at trial. No evidence is no evidence. The FTC's claims were based on assumption and speculation, not evidence, and the FTC does not show otherwise, continuing instead to point to the same assumption and speculation rejected at trial. *Id*. at 3–7.

Equally unavailing is the FTC's attempt to show its claims enjoyed a basis in law. The FTC ignores apposite authority and points instead to inapposite authorities that have nothing to do with circumstances here. *Id.* at 9–14. Showing how ***other*** claims involving distinct facts could have had a basis in law does not show how the FTC's claims ***here*** lacking those facts had a basis in law.

***Second***, the FTC falls back on the idea that, even if the FTC's claims were baseless, special circumstances render it unjust to award fees. *Id*. at 14–15. The "special circumstance" to which the FTC points, however, is that Olson is not eligible for fees. *Id.* But Neora—not Olson—is the movant, and Neora ***is*** eligible. Unsurprisingly, controlling authority rejects the FTC's position.

***Third***, revealing it cannot establish substantial justification or exceptional circumstances, the FTC falls back on various objections to the reasonableness of Neora's request. But the FTC misses the mark. While Neora does not dispute the FTC identified isolated deficiencies, Neora has addressed those deficiencies by providing the inadvertently omitted information and agreeing to deductions where appropriate. Neora's final requested fees and expenses total **$5,220,219.52**, as reflected in Ex. J. The Court should reject the FTC's attempt to leverage the reasonable need for minor additional details into an astoundingly unreasonable 92% reduction.

In short, Neora endured an expensive multi-year odyssey through the administrative

bureaucracy and courts, to demonstrate what it knew all along—the FTC's claims were unjustified.

## I.      FTC FAILS TO SHOW ITS POSITIONS WERE SUBSTANTIALLY JUSTIFIED.

The FTC failed to meet its burden to show its positions were not only justified but were justified at *every* stage of the proceedings.  *See Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir. 1986).  The FTC attempts in vain to show its claims enjoyed a basis in fact by pointing only to assumption and speculation—neither of which is evidence.  *Id*. at 3–14.  Likewise, while the FTC asserts its claims enjoyed a basis in law, it points only to inapposite authority while continuing to ignore contrary apposite authority (including its own guidance).  *Id.*

### A.     The FTC Failed to Show its Pyramid Scheme Claim was Based on Anything More Than Assumption, Speculation, and Inapposite Authority.

"[A]ssumptions are not evidence."  *In re Magna Cum Latte, Inc*., No. 07-31814, 2007 WL 3231633, at *15 (Bankr. S.D. Tex. Oct. 30, 2007).  The FTC flounders on this basic tenet, as it fails to rebut Neora's argument that, since this Court found the FTC rested its claim on mere *assumption,* it necessarily lacked a basis in fact.  The FTC resorted to assumption precisely where it mattered most: "the second element of the *Koscot* test has been characterized as the *sine qua non* of a pyramid scheme," and it is with respect to this element that the FTC simply assumed what it was required to prove.  *See Fed. Trade Comm'n v. Neora LLC*, No. 3:20-CV-01979-M, 2023 WL 8446166, at *19 (N.D. Tex. Sept. 28, 2023) ("Put differently, Dr. Bosley—and, by extension, the FTC—assumes that purchases by BPs are never ultimate user sales. The Court finds that Dr. Bosley's third assumption is not supported by the evidence, and the FTC provides no other evidence to show that BP purchases should be uniformly treated not as sales to ultimate users.").

In attempting to rebut Neora's argument, the FTC points to its post-trial briefing; but there, the FTC simply repackages Dr. Bosley's *same assumptions*.  *See, e.g*., Opp'n at 3 (citing ECF No. 331 at 10, which in turn cites Dr. Bosley to argue that the *Koscot* test is satisfied).  The FTC also

points to the fact that "BPs bought more products, over longer time periods, than did Neora's Preferred Customers (PCs)" as a putative factual basis for its claim. *Id.* at 5. But, just as assumption is not evidence—"[s]peculation is not evidence," *Atkinson v. Hawkins*, No. CV H-22-2652, 2023 WL 2227717, at *3 n.13 (S.D. Tex. Feb. 24, 2023)—and here, as this Court observed, the FTC is simply **speculating** about what **could be** true, not offering evidence of what is true. *See, e.g.*, ECF. No. 347 ("Order") at 34 ("The FTC speculated that Neora BPs *could* be making such purchases, but provided no evidence to suggest that is the case for the majority of BPs so as to support Dr. Bosley's assumption."). The rest of the supposed evidence to which the FTC points is either more assumption and speculation—neither of which is a basis in fact.[1] The FTC's ultimate reliance on assumption and speculation here is unsurprising, given that the FTC staff decided to recommend filing of its complaint before the FTC economists had even completed their review of Neora's business operations data. Supp. Ex. A at ¶ 19 (APP at 1421-22).

Equally unavailing is the FTC's attempt to show its pyramid scheme claim enjoyed a basis in law. While the FTC announces its claim was consistent with the majority legal position, it ignores apposite authority that precludes the claim. *See Washington Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1431 (W.D. Wash. 1989) (finding the Government's claims were unjustified because it "simply ignored" apposite law); *see also* Trial Ex. 114 ("2004 FTC Advisory Op."); Trial Ex. 115 ("2018 FTC Guidance"). Indeed, the authorities the FTC cites, only undermine its claim. The FTC cites *Vemma* but, as this Court noted, the FTC's claim here is

---

[1] *See* Opp'n at 5 (speculating that because some unspecified BPs supposedly "loaded up on inventory" that BPs generally must not be end users); *id.* at 6 (speculating that because training videos discussed auto-delivery orders BPs generally could not be end users); *id.* (speculating that profit motive means that BPs could not also be end users); *id.* (invoking Dr. Bosley's assumption concerning Neora's Compensation Plan); *id.* at 7 (speculating that because Neora's training materials "emphasized recruiting over sales" the BPs must not be end users); *id.* (speculating that because top-earning BPs had fewer customers BPs generally are not end users).

*inconsistent* with *Vemma*, as that case involved evidence absent here.  *See* Order at 34 ("[T]here is evidence the FTC could have provided, but did not, which could have supported its position. For example, the court in *Vemma* observed that 'evidence that distributors purchase and consume product for the purpose of qualifying for recruitment incentives is evidence of a pyramid scheme.'").  Likewise, the FTC cites *Burnlounge*, but that case concerned the viability of a claim where there was evidence of what actually happened when a rewards program was removed— evidence absent here.  *Id.* at 36 ("There, once the company [] stopped offering the ability to earn cash rewards, revenues plummeted . . . Here, . . . there is no suggestion that eliminating the rewards program would result in a similar decline of revenues at such a precipitous rate.")  What these authorities show is that **other** claims in **other** circumstances had a basis in law.

Furthermore, the FTC's opposition ignores *Torres I* and *Torres II*, *Torres v. S.G.E. Mgmt.*, 805 F.3d 145, 153–54 (5th Cir. 2015) (*Torres I*), rev'd on other grounds, 838 F.3d 629 (5th Cir. 2016) (en banc) (*Torres II*), failing to explain how its legal positions could be substantially justified when it refused to follow persuasive Fifth Circuit precedent this Court heavily relied upon in rejecting the FTC's claims.  Order at 27 (". . . the Court thus finds the *Torres I* commentary about pyramid schemes to be relevant persuasive authority."); *id*. at 29 ("[T]he Court's discussion will focus on the second element of the *Koscot* test. . .interpreted through the [of] lens the Fifth Circuit's guidance in *Torres I* and *Torres II*, and other relevant authority.").  And apparently, the FTC itself recognizes that its pyramid scheme claims against Neora were contrary to its prior guidance, as it has now seen the need to attempt to "rescind" that guidance, thus questioning the Court's opinion.[2]

The FTC's failure to carry its burden is unsurprising given that the FTC's claim "hinges

---

[2] March 15, 2024 letter of Lois Greisman to the DSA
https://www.ftc.gov/system/files/ftc_gov/pdf/3.15.24%20Letter%28003%29.pdf

on whether sales to BPs are sales to ultimate users, and the FTC simply assumes that they are not." *Id*. at 33.  If an agency decision to hinge its claim on an ***assumption*** (while ignoring its own guidance and Fifth Circuit authority) does not fall short of substantial justification—nothing does.

### B.    The FTC Fails to Justify Its Misrepresentation Claim.

***First***, as Neora argued (and the FTC fails to rebut), the FTC's claim that Neora was making deceptive claims was unjustified for the simple reason that the FTC failed to identify any actionable statements made by Neora.  In response, the FTC points to the same statements this Court rejected, without explaining why this Court erred in rejecting the statements: namely, (1) past statements that have been superseded by current statements, and (2) current statements that are plainly not misleading.  Opp'n at 7–8.  Such statements cannot serve as a basis for a misrepresentation claim—much less injunctive relief—and the FTC has not shown otherwise.

***Second***, recognizing that it cannot justify its misrepresentation claim by pointing to statements made by Neora, the FTC falls back on statements made by BPs.  *Id*. at 8.  But holding one party responsible for the statements of another is, of course, unjustified absent a significant evidentiary showing establishing a basis for imputation.  And here, far from making such a showing, the FTC simply "sidestep[ped] its evidentiary burden."  Order at 45.

While the FTC asserts it presented evidence BPs were acting as agents, ***none*** of the supposed evidence meets the legal standard.  As the Court explained, for the FTC to be justified in imputing statements to Neora, the FTC needed evidence that Neora had the power to "dictate the means and details" of the BPs' actions.  Order at 45.  Evidence that Neora sets standards, guidelines, or provided instruction to its BPs, as this Court already made clear, is insufficient.  *Id.* Yet, it is just such legally baseless "evidence" to which the FTC continues to point.

### C.    The FTC Fails to Justify Its "Means and Instrumentalities" Claim.

As the FTC concedes, its "means and instrumentalities" claim is derivative of its

misrepresentation claim.  Thus, for the reasons above, the FTC also failed to justify this claim.

### D.   That the FTC Avoided Summary Adjudication Cannot Carry the FTC's Substantial Justification Burden.

Recognizing it cannot show factual and legal bases for its claims, the FTC argues that, since its claims survived summary adjudication, they must have been substantially justified.  As the FTC's own authorities explain, while surviving summary judgment may be *relevant*, it is by no means *sufficient*.  *See Davidson v. Veneman*, 317 F.3d 503, 507 (5th Cir. 2003) ("the district court's judgment in favor of the Government is not sufficient, in and of itself, to show that the Government's position was substantially justified").

This is especially true where the FTC survived summary judgment merely by creating the *appearance* of a dispute of fact—which was shown at trial not to have been *genuine*.  Here, Neora moved for summary judgment *only*[3] as to the FTC's pyramid scheme claim, and in response the FTC relied on Dr. Bosley, attempting to raise a question of fact.  *See, e.g.*, ECF No. 197 at 43, Opp. Summ. J. ("Such BP purchases are therefore not 'ultimate' user sales. This conclusion is bolstered, as it was in *Vemma*, by Dr. Bosley's analysis.").  At trial, however, it became clear to the Court that Dr. Bosley was simply *assuming* her conclusion, not basing it on any evidence, much less the substantial evidence provided in *Vemma*.  *See* Order at 34.  Thus, since an expert's *assumption* is insufficient to create a fact question, the FTC merely manufactured the appearance of a fact question to survive summary judgment. *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (holding expert assumptions are insufficient to create a triable question of fact.).

The fact that the FTC wrote an evidentiary check to survive summary judgment which bounced at trial is the quintessential circumstance in which surviving summary judgment is not

---

[3] Accordingly, since Neora did not move for summary judgment as to the misrepresentation or means and instrumentalities claims, no inference whatsoever can be drawn as to these claims.

probative of substantial justification. *See, e.g., United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010) (noting that even a claim that survived summary judgment could still lack sufficient justification because "something might emerge at trial that showed that the government really had no case at all"). Courts have accordingly not hesitated to award fees **even when** the Government survived summary judgment. *Int'l Custom Prod., Inc. v. United States*, 843 F.3d 1355, 1361 (Fed. Cir. 2016), is instructive. There, as here, the Government survived dispositive motions but "evidence and arguments presented after the [lower court] denied [the defendant's] motion to dismiss and motion for summary judgment" revealed the Government's position was untenable, and the lower court awarded fees. *Id.* at 1361. In affirming, the Federal Circuit rejected the Government's argument that, by surviving dispositive motions, the Government's position necessarily enjoyed bases in fact and law. *Id.* The court explained a non-movant may survive dispositive motions for many reasons consistent with a later fee award:

> Indeed, avoiding summary judgment does not necessarily mean that the position taken at that stage has a reasonable basis in law and fact. For example, pursuant to Federal Rule of Civil Procedure 56(d), the court may defer consideration of the motion or deny it when a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Such circumstances may arise because, inter alia, the party asserting Rule 56(d) did not possess all of the requisite information, necessitating discovery, or the party moving for summary judgment presented temporarily unverifiable or otherwise unusable evidence. The circumstances also may arise simply because final resolution may require the trier of fact to observe witnesses and determine their credibility.

*Id.* at 1361. The same is true here.

## II.   THE FTC FAILS TO SHOW SPECIAL CIRCUMSTANCES EXIST.

The FTC argues that because Olson is ineligible to receive fees, it would be unjust to award Neora fees (even though Neora **is** eligible to receive fees). Opp'n at 14. This non sequitur is contrary to law. The FTC cites *State of La., ex rel. Guste v. Lee*, but this case undermines rather than supports the FTC's argument. *Id.* 853 F.3d 1219, 1225 (5th Cir. 1988). In *Guste*, it was the

party moving for fees that joined the ineligible party, whereas here it was ***the FTC that joined the ineligible party***.  *Id.*  Thus, as the Fifth Circuit itself has recognized, *Guste*—which is concerned with an ineligible plaintiff nominally adding an eligible plaintiff (to free-ride off the other plaintiff's eligibility)—is entirely inapplicable in circumstance such as the present, where no such risk is present.  *See Texas Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 n.7 (5th Cir. 1996) ("As USDA concedes, the "free-rider" analysis in *Guste* is limited to suits prosecuted against the United States by co-plaintiffs who both are eligible and ineligible, respectively, for EAJA fees, a situation not present here.").  Here, to apply *Guste* here would allow the Government to add an ineligible defendant, assert baseless claims, and thereby insulate itself from fees—precisely the kind of "free-riding" the Fifth Circuit was concerned with preventing.

## III.   NEORA'S FEE REQUEST IS REASONABLE

Finally, having failed to establish substantial justification or special circumstances precluding the award of fees, the FTC resorts to a blunderbuss attack on the reasonableness of the fees and expenses requested, arguing that somehow Neora's award should be reduced by 92% from $5,875,826.95 to $470,745.24 because of various supposed deficiencies.  Unsurprisingly, given the facial implausibility of the award to which the FTC arrives for a multi-year litigation of this magnitude, the FTC's putative bases for reduction are unsound.

### A.   The Inclusion of Olson does not Warrant any Reduction.

The FTC incoherently argues that half the fees sought by Neora should be deducted because of Olson's involvement.  The FTC refutes itself, however, as it also argues ***there are no fees solely attributable to Olson***.  As the FTC concedes, "Olson's liability under the FTC Act is derivative from that of Neora" and "every issue concerning Neora's liability also related to Olson's."  In other words, the fees and expenses Neora incurred would have been incurred ***with or without*** Olson's involvement, thereby refuting any basis for a deduction.

But even if there were fees incurred specifically in connection with Olson's involvement, any such fees would remain recoverable. Fees incurred in connection with an ineligible claim are recoverable if they are sufficiently intertwined with fees incurred in connection with an eligible claim. *See, e.g., United States v. Jones*, 125 F.3d 1418, 1420 (11th Cir. 1997) ("where related legal theories are intertwined in a complaint that relies on the same facts, a district court does not abuse its discretion when it orders the United States to reimburse a prevailing defendant for all the work performed in presenting the defense"). And here, as the FTC concedes, the claims against Olson are entirely derivative of the claims against Neora; so, they are *a fortiori* intertwined.

### B. Fees and Expenses Incurred Prior to Filing are Recoverable.

The FTC incorrectly asserts that fees and expenses incurred prior to the filing of a lawsuit are categorially not reimbursable, and improperly seeks to exclude $1,181,730.52 in pre-litigation fees and expenses. The plain language of the EAJA statute contradicts the FTC's blanket assertion as it does not impose a temporal restriction against pre-filing fees and expenses but rather contemplates fees and expenses in preparation of litigation. *See* 28 U.S.C.S. § 2412(d)(2)(A) (allowing recovery of "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court **to be necessary for the preparation of the party's case**") (emphasis added). Accordingly, courts have held that pre-filing fees **are** reimbursable when, as here, they bear the requisite nexus to the litigation at issue. *See, e.g., Powell v. Comm'r,* 891 F.2d 1167, 1172 (5th Cir. 1990) (finding "plaintiff is entitled under the EAJA to recover all attorney's fees and expenses reasonably incurred in connection with the vindication of his rights" without imposing any temporal limitation); *Smith v. Berryhill*, 2019 WL 1751835, at *4 (C.D. Cal. Feb. 20, 2019) ("Pre-Complaint work is compensable so long as it

involves work in preparation for the case.").  The FTC's authorities do not show otherwise.[4]

Here, Neora's need to incur the prelitigation fees and expenses was caused by the same positions the FTC later took in the litigation, and Neora relied on the same work-product generated by these fees and expenses in the litigation.  Indeed, as Dr. Vandaele averred, the work he began performing in Nov. 2017 consisted of an "analysis of the [FTC's] allegation that Neora's [MLM] business in the United States was operating as an illegal pyramid scheme"—the same issues later litigated—and Dr. Vandaele's analysis was later used to rebut the opinion of Dr. Bosley.  Mot., Ex. D ("Vandaele Decl.") at ¶ 11 (APP at 997).  The first white paper Dr. Vandaele prepared pre-complaint and presented to the FTC staff during the Febr. 22, 2019 meeting in Chicago, was not just relied on during litigation but became the basis for Trial Exhibits 1316 and 1317.  *See* Supp. Ex. A at ¶ 21 (APP at 1423).   Likewise, the second white paper dated August 27, 2019, used in presentations to FTC commissioners, became the basis for Trial Exhibits 1319, 1322, and 1316. *Id.*  Thus, the touchstone of recoverability—the requisite causal nexus—exists here.

### C.    Fees for Other Lawsuits and Collateral Advocacy are Recoverable.

The FTC also asserts that fees and expenses incurred in connection with other lawsuits are categorically unrecoverable; and on this basis seeks to deduct all fees and expenses relating to three lawsuits.  But the FTC does not cite *a single* authority for its proposed *per se* prohibition, and in fact courts have allowed the fees associated with collateral advocacy to be recovered when they serve to promote the litigation goals and are consistent with what a private attorney without

---

[4] The FTC relies on *Forest Conservation Council v. Devlin*, 994 F.2d 709, 711 (9th Cir. 1993), but in that case the court concluded that pre-litigation fees that persuaded the Government to drop its lawsuit were not recoverable—not because pre-litigation efforts are not recoverable—but because, in those circumstances, the movant was not a prevailing party in a litigation.  *See id.* at 712 ("Forest Conservation asks this court to extend the definition of prevailing party. . . We decline to do so."). Equally unavailing, the FTC cites *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 706 (Fed. Cl. Mar. 2, 2010).  But in that case, there was no showing of a nexus between the pre-complaint efforts and later success in the lawsuit.  *See id.* at 705–06.

the prospect of reimbursement would have done on behalf of its client in the same situation. *Pollinator Stewardship Council v. U.S. Env't Prot. Agency*, 2017 WL 3096105, at \*10–11 (9th Cir. June 27, 2017) ("Private attorneys do such work and bill their clients, and prevailing parties under EAJA may do the same.").

Here, Neora's declaratory judgment lawsuit against the FTC meets this standard.  Neora would not have filed this action but for the positions that the FTC took during the CID phase and the FTC continued to push those same positions in the litigation.  *Compare Fed. Trade Comm's v. Neora, LLC (F/K/A Nerium Int'l, LLC) et al.*, No. 3:19-cv-19699-FLW-TJB (N.D. Tex. Nov. 1, 2019), ECF. No. 1 (complaint the FTC sent during the CID phase), *with Nerium Int'l, LLC N/K/A Neora, LLC et al. v. Fed. Trade Comm's*, No. 1:19-cv-7189-SLE (N.D. Ill. Nov. 1, 2019), ECF. No. 1 (Declaratory Judgement complaint challenging same positions contained in FTC Complaint); *see also* Supp. Ex. A at ¶ 20 (APP at 1422-23).

Likewise, the fees incurred in connection with Neora's attorneys monitoring the Smith Arbitration, and advising on Neora's positions taken in same, are also recoverable, as they were incurred due to the FTC's claims in this lawsuit.  *See* Supp. Ex. A at ¶ 22 (APP at 1423-24).  The FTC's objections are striking as the FTC's own Initial Disclosures identified the Smiths as persons with knowledge.  *Id*.  And the FTC subpoenaed the Smiths' law firm to obtain discovery exchanged in the arbitration, which required Neora to file a Motion to Quash.  *Id*.  The FTC made the Smith Arbitration an issue and cannot now argue fees relating to the matter are not recoverable.

Further, the fees incurred in relation to Neora's potential amicus brief in the FTC's case against the Credit Bureau Center are also plainly recoverable as they were incurred in furtherance of Neora's litigation goals here.  In that case, the Seventh Circuit held "that section 13(b)'s permanent-injunction provision does not authorize monetary relief"—precisely what the FTC

11

sought from Neora.  *See Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 786 (7th Cir. 2019).  Thus, while the FTC petitioned the U.S. Supreme Court for review, denial of cert would of course have been beneficial to Neora here and thus Neora's efforts in promoting that outcome clearly bore a direct nexus to the lawsuit here.  *See* Supp. Ex. A at ¶ 23 (APP at 1424-25).

Finally, although courts have recognized that a wide range of collateral advocacy may be recovered under the EAJA—such as media outreach and lobbying efforts—Neora is not seeking to recover the fees it incurred related to its general lobbying and press advocacy more broadly. Such fees were backed out of Neora's request.  *Id.* at ¶¶ 15–17, 23 (APP at 1418-21, 1423).  Neora is seeking to recover only such collateral advocacy efforts that are causally connected with the present lawsuit.  Thus, the FTC's objection to fees incurred by Neora to address its BBB accreditation misses the mark.  These efforts were not generalized lobbying, but specific advocacy occasioned by the FTC's accusations here, and necessary to defeating them, given that, if Neora did not address the BBB complaints, they could have been used by the FTC as evidence at trial. *Id.* at ¶ 24 (APP at 1425).  And likewise, as noted, the advocacy efforts directed to state attorneys general in connection with the Credit Bureau litigation were not generalized lobbying, but advocacy necessitated by the positions the FTC took here and specifically connected to Neora's goals in defeating those positions.  *See* Supp. Ex. A at ¶ 23 (APP at 1424-25) (discussing Inv. Nos. 40310824; 50084719; 50195110).

### D.  Fees and Expenses Related to Neora's Third-Party Funding are Recoverable.

The FTC objects to Neora's recovery of fees for which it received third-party funding. Neora's counsel received $475,000 in third-party funding that assisted Neora in the defense of the FTC's claims, *Id.* at ¶ 25 (APP at 1425), and Neora has deducted that funding from the amount it is requesting as shown in Ex. J.  The FTC, however, also argues the costs incurred by Neora in securing third-party funding should be deducted.  But the costs Neora incurred to obtain such

12

funding were caused by the FTC's claims. It is hard to think of costs that bear a more direct causal nexus to the existence of a lawsuit than costs incurred in securing funding to defend it.

### E.      The Rates Charged for Vandaele's Assistants are Reasonable.

The FTC's objection to the rates sought for Dr. Vandaele's assistants also misses the mark. As Neora demonstrated in its Motion, Mr. Staines is an economic consultant with a degree in economics and two graduate degrees. Mot., Ex. D-I at 20 (APP at 1016). He has served as the managing director of the Ankura Consulting Group and has offered expert opinions in multiple cases. *Id.* Further. Dr. Vandaele confirms that Mr. Staines was his "second hand" in performing expert services for Neora and was responsible for "designing the database necessary to analyze Neora's data, gathering that data, and assisting" Dr. Vandaele in drafting his expert report. *Id*. at ¶ 13 (APP at 997-98). Thus, $500 per hour for Mr. Staines is well within reason.

The FTC also objects to the entries for Dr. Vandaele's other assistants. Contrary to the FTC's assertion, the Court is ***not*** left guessing "what services were performed and by whom" as Dr. Vandaele states that he "heavily utilized other Research and Administrative Support in conducting [his] analysis[,]" who "performed many tasks" at his direction, "such as writing database source code and running the programs necessary to complete my expert analysis." *Id*. at ¶ 13 (APP at 997-98). Nevertheless, rather than burden the Court with an additional dispute, Neora reduced the rates of Dr. Vandaele's other assistants to $100 per hour, amounting to a $347,994.78 reduction in its request, as reflected in Amended Ex. I.

### F.      FTC's Unitemized Expense Allegations are Baseless or Have Been Cured.

***First***, the FTC objects to approximately $450,000 in expenses it claims are unitemized. As shown in Ex. K the FTC is mistaken. The Court can clearly see that the requested expenses are properly itemized in Neora's invoices and encompass compensable categories. *See* Mot. at 17 (collecting cases); *see also KMS Fusion, Inc. v. United States,* 39 Fed. Cl. 593, 605 (1997) (holding

13

meals reimbursable).   And the FTC has provided no justification to question Mr. Burbach's testimony that the itemized expenses were reasonable and necessary for defense of Neora.  Neora did, however, make a calculation error in its Motion requesting some unitemized expenses, which, as demonstrated in Amended Ex. H, Neora has removed from its attorney expense request.

**Second**, the FTC objects to approximately $27,000 in fees related to Invoice No. 50138366. Neora inadvertently omitted the itemized time entries supporting its request related to this invoice, but Neora has provided the entries and established they are reasonable and necessary for the defense of Neora.  *See* Supp. Ex. A at ¶ 14 (APP at 1414–15); *see also* Ex. A-III (APP at 1429-42).

**Third**, the FTC objects to the $48,700 Neora paid Material Holdings for the preparation of a litigation survey.  But Neora had the survey prepared to rebut the FTC's supposed evidence.  The survey was therefore necessary to the FTC's defense in this litigation, as evidenced by the fact that the Court relied on the survey.  Order at 32–35.  And as far as cost, the survey analyzed why BPs joined Neora and it had 361 total respondents: 235 current BPs and 126 former BPs.  As Ms. Rory explained, $48,700 to conduct a survey of that scope is reasonable, and the FTC provided no evidence to the contrary.  Nevertheless, rather than burden the Court, Neora has reduced the cost it seeks on the survey by 25%, as reflected in Amended Ex. I.

### G.  The FTC's Complaints About Block Billing and Redactions are Meritless.

The FTC baselessly asserts that, due to various block-billing, compensable time cannot be segregated from non-compensable time and demands a general discount of 75%.  But, as Mr. Burbach explains in Supplemental Ex. A, he reviewed all the invoices and backed out time that was not reasonably related to the defense of Neora.  *See* Supp. Ex. A at ¶¶ 15–17 (APP at 1418-21). And when he identified non-compensable time, he took an extremely conservative approach and backed out ***all time*** related to the entry containing non-compensable time—even where the entry contained compensable time as well.  *Id*.  In response, the FTC asserts that there might be non-

14

compensable time that has not been backed out (without pointing to any evidence where this is the case). The FTC's unsupported assertions cannot controvert the testimony of an attorney with more than 25 years of experience. *See Scarborough v. Nicholson*, 19 Vet. App. 253, 266 (2005) ("[B]ecause Mr. Scarborough's attorneys stated that they exercised billing judgment, and certainly achieved for him tremendous success in what the Court concludes was an efficient manner, we consider the challenged so-called block-billed hours to have been reasonably expended. . .").

Finally, while the FTC objects that redactions inhibit its ability to scrutinize the bills, Neora has provided Ex. L (APP at 1515-39) showing all the redacted entries for which it seeks recovery. Neora also adjusted the redactions to provide additional disclosure where appropriate.[5] Neora submitted over 800 pages of itemized invoices to the Court, yet the redacted entries for which it seeks fees fit in only 25 pages, demonstrating the reasonableness of Neora's limited redactions. Neora has nothing to hide; its fee request is just and reasonable, just as Mr. Burbach testified.

## IV. NEORA'S REQUEST FOR FEES RELATED TO THIS REPLY

The EAJA fee recovery "should include counsel's time spent litigating the fee issue itself where the government's position in the underlying dispute was determined to be, or 'conceded to be' not substantially justified." *Powell v. Comm'r*, 891 F.2d 1167, 1170–71 (5th Cir. 1990). Consequently, Neora is entitled to recover fees and expenses incurred in briefing this Motion, which are reflected in the itemized invoices attached to Amended Ex. C and accounted for in Amended Ex. H.

---

[5] And Neora has provided the unredacted entries to the Court for *in camera* review.

Dated: March 27, 2024                                      Respectfully submitted,


                                                          **WINSTON & STRAWN LLP**


                                                          */s/ Katrina G. Eash*
                                                          **Katrina G. Eash**
                                                          Texas Bar No. 24074636
                                                          keash@winston.com
                                                          **John C.C. Sanders, Jr.**
                                                          TX Bar No. 24057036
                                                          jsanders@winston.com
                                                          **Dion J. Robbins**
                                                          Texas Bar No. 24114011
                                                          drobbins@winston.com
                                                          **Samuel Riebe**
                                                          Texas Bar No. 24136101
                                                          SRiebe@winston.com
                                                          2121 N. Pearl St., Suite 900
                                                          Dallas, TX 75201
                                                          Telephone: (214) 453-6500
                                                          Fax: (214) 453-6400

                                                          **COUNSEL FOR DEFENDANT
                                                          NEORA, LLC**

## CERTIFICATE OF SERVICE

On March 27, 2024, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas via the Court's ECF system and hereby certify that I have served the document on all counsel and parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

*/s/ Katrina G. Eash*
**Katrina G. Eash**