IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 3:20-cv-01979-M |
| NEORA LLC, et al., | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Neora LLC's Motion for Fees and Expenses Under the Equal Access to Justice Act. ECF No. 355. For the reasons stated below, the Motion is **DENIED**.

I.  BACKGROUND[1]

In 2019, Plaintiff Federal Trade Commission ("FTC") filed a Complaint against Neora, LLC ("Neora") and Jeffrey Olson, seeking a permanent injunction based on five alleged violations of the FTC Act in connection with Neora's health supplement multi-level marketing business.[2] Compl. (ECF No. 1). ¶¶ 1, 4. In October 2022, the Court held a multiday non-jury trial, during which the Court received evidence and heard sworn testimony. On September 28, 2023, the Court entered its Findings of Fact and Conclusions of Law, denying the FTC's requests for relief, and entered Final Judgment on behalf of Neora and Olson. ECF Nos. 347 ("Mem.

---

[1] The Court assumes the parties' familiarity with the facts of the case and the parties' respective positions, and provides only a cursory overview of the procedural background. Capitalized terms have the same meaning attributed to them in the Court's Findings of Fact and Conclusions of Law. *See generally* Mem. Op. (ECF No. 347).
[2] The FTC also brought claims against Defendants Signum Biosciences, Inc. and Signum Nutralogics, which settled shortly after the Complaint was filed. ECF No. 10.

Op."), 348.  Neora now seeks its attorneys' and experts' fees and expenses pursuant to the Equal Access to Justice Act.

## II.   LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") provides that federal courts shall award fees to the prevailing private party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  To avoid the imposition of fees, the government bears the burden of demonstrating that its position was "justified to a degree that could satisfy a reasonable person." *Nkenglefac v. Garland*, 64 F.4th 251, 253 (5th Cir. 2023) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  The Court evaluates the government's position under the totality of the circumstances: "[p]rovided the government's position as a whole was reasonable, a prevailing party may not recover EAJA fees even though some of the government's actions or arguments were without merit."  *W.M.V.C. v. Barr*, 926 F.3d 202, 210 (5th Cir. 2019); *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.").  If the government can show that its position has a reasonable basis both in law and in fact, fees should be denied.  *Broussard v. Bowen*, 828 F.2d 310, 312 (5th Cir. 1987).

## III.   ANALYSIS

Neora requests a total of $5,220,219.52 in attorneys' and expert fees and expenses,[3] arguing that the FTC's positions were not substantially justified.  The FTC disagrees, and further contends that special circumstances—namely, that the high net worth of co-Defendant Olson,

---

[3] Specifically, Neora requests $3,503,209.49 in total attorneys' fees and expenses and $2,002,928.02 in expert fees and expenses, less $285,917.99 to reflect third-party funding Neora has already received.  ECF No. 375-1 at App.1506.

2

who owns and controls Neora—render any potential fee award unjust.[4] The parties further dispute the reasonableness of Neora's requested fees.

Considering the totality of the circumstances, the Court concludes that the FTC's position was substantially justified, and does not reach the parties' remaining arguments. In support of its request for fees, Neora seizes on language from the Court's Findings of Fact and Conclusions of Law observing that the FTC provided "no evidence" in support of various discrete issues, to suggest that the FTC's position was lacking in factual support from the outset, and similarly contends that "clear and unambiguous legal precedent" governed the outcome. *E.g.*, ECF No. 355 at 11. In doing so, Neora discounts and downplays the legitimate and substantial disputes presented by the parties throughout this case's lengthy procedural history, an intervening Supreme Court decision that clarified the FTC's available recovery (*see* ECF No. 82), the FTC's success on various pre-trial motions (*e.g.*, ECF No. 188), the lack of clear *binding* precedent governing certain issues, and the fact that, in other cases, similar evidence presented by the FTC was found sufficient for it to prevail on the merits.

Lest there be any doubt: the Court considered this to be a close case, and reached its final decision only after careful scrutiny, assessment, and weighing of every piece of evidence in context following a comprehensive trial. *See, e.g.*, Mem. Op. at 3 nn.2–150. The FTC's position had a reasonable basis in law and fact, thereby warranting denial of Neora's request for fees and expenses under EAJA.

Regarding the pyramid scheme claim, the Court notes that, besides recital of the two-element test set forth in *In re Koscot Interplanetary, Inc., et al.*, 86 F.T.C. 1106, 1975 WL

---

[4] The FTC does not dispute that Neora qualifies as the prevailing party and is otherwise eligible for fees under EAJA, *i.e.*, is a corporation or organization "the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." *See* 28 U.S.C. § 2412(d)(1)(A)–(B), (2)(B).

173318 (1975), no authority binding on this Court has defined an "illegal pyramid scheme" or provided clear guidance to "separate[] illegal pyramid schemes from legitimate multilevel marketing programs." *See Torres v. S.G.E. Mgmt.* ("*Torres II*"), 838 F.3d 629, 639 (5th Cir. 2016) (en banc). As such, the relative weight, if any, to place on other persuasive authority—such as FTC guidance documents and out-of-circuit caselaw—and evidence informing the *Koscot* inquiry is left to the "unfettered . . . discretion of the district court." *See id.* at 653–54 (Jones, J., dissenting).

In this case, the FTC structured its pyramid scheme claim around the second element of the *Koscot* test, which asks whether participants in the alleged pyramid scheme receive "the *right* to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users." 1975 WL 173318 at *60 (emphasis added). Because the test evaluates the rights that participants receive through the scheme, the FTC argued that courts applying *Koscot* should focus on the particular defendant's compensation plan, "before or even in lieu of considering operational data." ECF No. 331 at 11–12 & n.9 (citing cases). As a result, the FTC's evidence and arguments in support of its pyramid scheme claim, including the opinions and assumptions of its expert, Dr. Stacie Bosley, emphasized the terms of Neora's Compensation Plan and the rights Brand Partners receive thereunder. *See, e.g.*, Mem. Op. at 31 n.117 (noting that, in making her assumption about the purchasing motivations of Brand Partners, Dr. Bosley "relied on her interpretation of the reward structure and incentives as laid out in the Compensation Plan"); ECF No. 364 at 12–14 (summarizing evidence). Relatedly, the FTC discounted other evidence—such as Neora's revenues, sales to Preferred Customers, and

4

potential for eventual collapse—that are not encompassed within the *Koscot* test and are unrelated to Neora's Compensation Plan.[5]

Here, admittedly, the Court ultimately found reason to look beyond the plain terms of the Compensation Plan, in part based on its reliance on non-binding authorities. *See generally* Mem. Op. at 31–41. However, the FTC was substantially justified in relying primarily on *Koscot*, the terms of the Compensation Plan, and related evidence in support of its pyramid scheme claim, an approach that has been approved by other courts. *See, e.g.*, *Fed. Trade Comm'n v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at *4 (D. Ariz. Sept. 18, 2015) (adopting an assumption from Dr. Bosley similar to the one presented here). As discussed, the absence of binding caselaw and clear guidelines renders the pyramid scheme inquiry highly discretionary; although the FTC did not prevail here, its position might have satisfied a different reasonable factfinder.[6] *See Broussard*, 828 F.2d at 312 ("[T]he government's mere loss of the case gives rise to no presumption that the government's position was not substantially justified . . . .").

---

[5] The FTC's position to resolve the pyramid scheme inquiry primarily through evaluation of the Compensation Plan's terms—a potentially novel approach for streamlining resolution of these otherwise fact-intensive types of cases—was not foreclosed by caselaw and appears to have been made in good faith. *See Davidson v. Veneman*, 317 F.3d 503, 507 (5th Cir. 2003) ("The substantial justification standard should not be used to prevent the government from making novel arguments. Rather, the 'standard was designed to allow the government to advance in good faith . . . novel but credible . . . interpretations of the law that often underlie vigorous enforcement efforts.'" (cleaned up)).

[6] For instance, although the Court rejected one of Dr. Bosley's assumptions—that all purchases by Neora Brand Partners are made in pursuit of Neora's business opportunity—it recognized that there may have been a set of facts where such an assumption would be appropriate and reasonable. *See* Mem. Op. at 36 n.121. In addition, the Court denied Defendants' Motion for Summary Judgment on the FTC's pyramid scheme claim, finding it necessary to "hear the testimony, observe the persuasiveness of the witnesses, and make an informed judgment based upon all the evidence," which provides further support for the Court's conclusion that the FTC's position was substantially justified. *See* ECF No. 281 at 72:9–15; *see also United States v. Pecore*, 664 F.3d 1125, 1135 (7th Cir. 2011) (surviving summary judgment is "objective, although not necessarily conclusive, evidence" that the government's position is substantially justified); *Davidson*, 317 F.3d at 506 (the government is substantially justified if there is a "genuine dispute" or "if reasonable people could differ as [to the appropriateness of the contested action]" (alterations in original)).

So too for the FTC's request for an injunction based on its income, product, and means and instrumentalities claims. To be entitled to an injunction under § 13(b) of the FTC Act, the FTC needed to establish that Neora was "violating, or . . . about to violate, any provision of law enforced" by the FTC. 15 U.S.C. § 53(b). The record demonstrates that the FTC had a reasonable basis in both law and fact to seek an injunction based on Neora's violations of the FTC Act. Regarding the income and product claims, the FTC presented evidence of statements attributable to Neora that the Court acknowledged violated §§ 5 and/or 12 of the FTC Act, which, under different circumstances, may have been sufficient to justify an injunction to prevent Defendants from making similar statements in the future. Specifically, the FTC presented multiple examples of deceptive representations by Neora about a Brand Partner's potential income. *See* Mem. Op. at 47 ("The Court agrees with the FTC that some of its examples of income-based statements by Neora are problematic and misleading as to the amount of money typically earned by a Neora BP, and lack any curative disclaimers or qualifiers."). Likewise, the FTC established that "improper efficacy claims" regarding Neora's EHT product were made during two separate Neora-sponsored conferences. *Id.* at 52.

The FTC's reliance on evidence of Neora's past violations is permitted by law and thus was legally reasonable. Specifically, "allegations of past conduct can give rise to a reasonable inference of current or future violations, either in conjunction with other circumstances or where the past violations are extensive." *Fed. Trade Comm'n v. Neora LLC*, 552 F. Supp. 3d 628, 637–38 (N.D. Tex. 2021) (citing *United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 816 (N.D. Tex. 2008)). That the Court ultimately concluded that evidence of Neora's past violations did not warrant an injunction based on its weighing of the evidence in this case— namely, its assessment of the *Cornerstone Wealth* factors, the length of time since the prior

violations, and evidence of Neora's training and compliance program—it does not follow that the FTC was unreasonable in seeking an injunction, particularly given that the Court agrees that Neora had previously violated the FTC Act.[7] *See* Mem. Op. at 50, 52–53.

Finally, the parties agree that the means and instrumentalities claim is derived from the income and products claim. ECF No. 364 at 16; ECF No. 375 at 9–10. Thus, because the FTC has carried its burden in showing that it was substantially justified as to the income and products claim, the Court finds that it was likewise substantially justified as to the means and instrumentalities claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the FTC has demonstrated that its position in this litigation was justified to a degree that could satisfy a reasonable person. *Nkenglefac*, 64 F.4th at 253. As a result, Neora cannot recover EAJA fees, and the Motion for Fees and Expenses Under the Equal Access to Justice Act is **DENIED.**

**SO ORDERED**.

May 29, 2024.

*Barbara M. G. Lynn*
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] In requesting EAJA fees, Neora also points to the Court's finding that the FTC did not provide sufficient evidence of an agency relationship between Brand Partners and Neora, so as to attribute Brand Partners' statements to Neora for purposes of the income and product claims. *See* Mem. Op. at 45–46. However, as discussed, the FTC was substantially justified in its position based solely on Defendants' own statements, without consideration of the statements by Brand Partners; thus, because the FTC's position as a whole was reasonable, fees are not recoverable. *See W.M.V.C.*, 926 F.2d at 210. Moreover, the Court determines that the FTC's position on the agency issue was, in fact, reasonable, particularly as to Neora. The FTC relied on accepted legal theories of actual and apparent authority in support of its position, and other courts have found an agency relationship in multilevel marketing distributorship cases similar to the circumstances presented here. The Court recognized that the FTC provided insufficient evidence— not *no* evidence—to warrant the requested finding of agency on behalf of all Brand Partners; however, the Court contemplated that the record could have supported a finding of apparent agency as to select, high-ranking Brand Partners based on their appearance in Neora-produced videos and at Neora-sponsored conferences. *See* Mem. Op. at 45. Such evidence could have thus satisfied a different reasonable factfinder, and thus the FTC's position as to the issue of an agency relationship between Brand Partners and Neora does not warrant the award of fees under EAJA.